Nathan SOLOMON,
Petitioner-Appellant,

v.

David HARRIS, Warden of Green Haven Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents-Appellees.

No. 1819, Docket 81–2180.

United States Court of Appeals, Second Circuit.

Submitted July 10, 1984.

Decided Nov. 6, 1984.

Daniel B. Rubock, New York City (White & Case, Phylis Skloot Bamberger, Legal Aid Soc. of N.Y., New York City, of counsel), for petitioner-appellant.

Robin Dolsky, Asst. Dist. Atty., New York City (Mario Merola, Dist. Atty., Peter D. Coddington, Asst. Dist. Atty., New York City, of counsel), for respondents-appellees.

Before OAKES, CARDAMONE and WINTER, Circuit Judges.

WINTER, Circuit Judge.

Nathan Solomon appeals from an order of Judge Brieant denying his petition for a writ of habeas corpus based on a claim of ineffective assistance of counsel. We affirmed, *Solomon v. Harris*, 742 F.2d 1438 (2d Cir.1983), applying the "farce and mockery" standard of *United States v. Wight*, 176 F.2d 376, 379 (2d Cir.1949), *cert. denied*, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950). On May 29, 1984, the Supreme Court, — U.S. —, 104 S.Ct. 2651, 81 L.Ed.2d 359, vacated and remanded for further consideration in light of *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We again affirm Judge Brieant.

Appellant was convicted in Bronx County, New York, of murdering Norman Duncan. The evidence at trial established that Solomon's co-defendant, Joe Miller, was a

drug dealer and that Solomon was his bodyguard. Various residents of the neighborhood in which the shooting occurred performed services for Miller and were given money or drugs in return. Duncan, the victim, and Donald Isom worked as lookouts, while George McFadden was a seller. At some point, Duncan and Isom became upset over the amount of money that Miller was giving them and discussed robbing Miller, who discovered and confronted them with the plan, which they denied. After this incident, both Isom and Duncan received even smaller amounts of money than before from Miller.

On June 18, 1974, Duncan argued with McFadden over the amount of money Duncan and Isom were receiving and told another resident of the neighborhood that he was going to rob McFadden. When Isom returned home from work that day, Duncan called and asked to meet him. At about the same time, Solomon arrived at 173rd Street and Hoe Avenue in the Bronx and met Miller. Miller gave a gun to Solomon, who sat down in a beach chair in front of a house on Hoe Avenue. McFadden was seated on the stoop of his home on the same side of the block, but further towards 172nd Street.

Sometime between 5:30 and 6:00 p.m., Duncan and Isom arrived at 173rd and Hoe and walked past Solomon toward McFadden. When they reached McFadden, Isom continued walking toward 172nd Street, while Duncan grabbed McFadden and began a scuffle. At that point Solomon rose from his chair, dropped to one knee and began firing. Duncan staggered across the street. According to the witnesses, including Isom, Isom returned the fire at some point thereafter. On March 25, 1976, a jury convicted Solomon of acting in concert with Miller to commit second degree murder.

On appeal to the Appellate Division, Solomon raised for the first time a claim under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), based on the trial judge's admission of Isom's testimony that Miller told him a week after the shooting that "my man could have killed you too." The Appellate Division affirmed without opinion. Appellant then began a state *coram nobis* proceeding in which he raised an ineffective assistance of counsel claim, based in part on counsel's failure to raise the *Bruton* objection. The petition was denied on May 15, 1979. The present petition followed. The only issue before us on remand is whether Solomon was deprived of the effective assistance of counsel within the meaning of *Strickland.* We conclude that he was not.

## DISCUSSION

Appellant bases his ineffective assistance claim on three events: (1) the failure of counsel to raise the *Bruton* objection; (2) the decision to call as a witness a court-appointed private investigator; and (3) an alleged failure to prepare adequately for trial.

■ Under *Strickland v. Washington,* — U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), an ineffective assistance claim must be based on a showing that a defendant was deprived of the "reasonably effective assistance" and that counsel's "deficient performance actually prejudiced the defense." 104 S.Ct. at 2064. Having examined the transcript of Solomon's trial, we conclude that neither prong of the *Strickland* test was met.

■ We conclude that the failure to raise the *Bruton* objection did not undermine Solomon's defense, which was based on a factual dispute over identification and a legal claim of justification. We note first that the state's evidence was very strong with regard to the identification of Solomon as the gunman who hit Duncan. It was not completely airtight with regard to that issue only because defense counsel alertly raised the possibility that the bullet that killed Duncan might have come from Isom's gun. He called attention to the seemingly downward path of the bullet in Duncan's body, which, when viewed in light of the fact that Solomon was kneeling while firing, might support a finding that

Solomon's shots did not kill Duncan. Although counsel carefully constructed this scenario in his closing argument, the jury chose not to believe it, in all probability because the path of the bullet was downward only if Duncan was upright when hit, a circumstance not necessarily consistent with the evidence of Duncan's struggle with McFadden.

Counsel's failure to raise the *Bruton* objection did not undermine the identification prong of the defense strategy. The evidence was that Solomon was Miller's bodyguard and that Miller had handed him a gun just before the shooting. Miller's reference to "my man" thus added nothing. Nor did Miller's implicit acknowledgment that Solomon fired the fatal shot undermine the Isom-as-killer theory. Rather, that theory was based largely on the proposition that neither Miller nor the other eyewitnesses could be sure who killed Duncan in the turmoil.

Second, the failure to make the *Bruton* objection in no way impaired the defense of justification raised by Solomon and his co-defendant Miller. Counsel for each argued that Miller and Solomon reasonably believed that Duncan was robbing McFadden and that the use of deadly force to stop the robbery was justified. Since Miller's statement to Isom was completely consistent with a justification argument, a failure to raise the *Bruton* objection was harmless. Indeed, to the extent that statement meant "When you tried to rob us, my man could have gotten you too," it actually bolstered the justification defense.

 Appellant also claims that the defense attorney's decision to call Vincent Garrett, an investigator, to testify that Isom had once said that he did not see Solomon at all on the day of the shooting gravely impaired the defense's case. Garrett testified on direct that Isom had stated in a taped interview that he had not seen Solomon on June 18, 1974. On cross-examination, however, the prosecutor noted eleven places in the transcript of that interview where Isom stated that Solomon had done the shooting. We view the argument that this testimony vastly strengthened the prosecution's case as a considerable exaggeration. Isom *did* state on the tape that he had not seen Solomon on June 18, 1974, and this demonstrated a major inconsistency in Isom's statements, notwithstanding the number of contrary assertions also on the tape. We can hardly declare as a matter of law that demonstration of the inconsistency was not a reasonable decision even in light of the many other statements on the tape consistent with his testimony at trial.

Appellant argues finally that counsel failed to prepare for trial. He claims, based on the expense voucher submitted by defense counsel, that counsel spent no time on the case whatsoever before trial. However, the voucher demonstrates that counsel mistakenly listed as "Time Spent in Open Court" some work prior to trial. Solomon also claims that counsel never interviewed him in jail. However, the record indicates that he met with counsel on various pre-trial court dates. Finally, we note that our examination of the record as a whole leaves us unpersuaded that defense counsel was unprepared. The identification and justification defenses were reasonable in concept and effectively presented.

Having concluded that trial counsel provided reasonably effective assistance to Solomon and that counsel's conduct did not cause actual prejudice to that defense, we affirm.