Franklin CUEVAS, Petitioner-Appellant,

v.

Robert HENDERSON, Superintendent of Auburn Correctional Facility, and Robert Abrams, Respondents-Appellees.

No. 1302, Docket 86–2022.

United States Court of Appeals, Second Circuit.

Argued May 22, 1986.

Decided Sept. 15, 1986.

made no such demand with respect to the relief sought against Miller.

Henriette Hoffman, New York City (Phylis Skloot Bamberger, The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for petitioner-appellant.

Randolph Volkell, Asst. Atty. Gen., State of N.Y., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., Robert Hermann, Sol. Gen., Harvey M. Berman, Monica R. Jacobson, Asst. Attys. Gen., State of N.Y., New York City, of counsel), for respondents-appellees.

Before LUMBARD, OAKES and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the South-

ern District of New York, Broderick, J., entered on October 21, 1985, denying a *pro se* petition for a writ of habeas corpus. The petition challenged a New York state court conviction for robbery in the first degree and other lesser counts. Petitioner Franklin Cuevas is serving a sentence of from five to fifteen years in prison.

## BACKGROUND

On August 25, 1981, Ms. Victoria Pappas was robbed and beaten in her apartment. During the robbery the assailant was in Ms. Pappas' apartment for one hour and twenty minutes. The apartment was well lit and the victim, who was wearing her eyeglasses, had a good opportunity to view her attacker. Ms. Pappas gave a description of the robber to the police. The following day, police officer William Mercurio showed her a group of sixty photographs. She selected a picture of Cuevas as that of her assailant. The same photographs were shown to the building superintendent who identified the photograph of Cuevas as that of a person he saw acting suspiciously on the day of the robbery.

On August 27, 1981, Cuevas was arrested inside the Manhattan Criminal Court building. The arresting officers testified that Cuevas told them that when he saw them in court he knew they were there to arrest him. At trial Cuevas denied making such a statement.

Upon arrival at the police station, Cuevas was placed in a lineup. The attorney who had been representing Cuevas in another pending matter in the criminal court attended and participated in the lineup procedures. While the building superintendent could not identify Cuevas as the person he had seen on the day of the robbery, Ms. Pappas picked Cuevas out of the lineup as the person who had robbed and assaulted her.

Cuevas was indicted, tried and convicted of robbery and burglary charges in the state court. Defense counsel moved for dismissal of the indictment after the state rested and in the alternative requested a

mistrial because of allegedly prejudicial testimony concerning Cuevas' arrest in the criminal court building. Defense counsel did not object to the jury charge.

Cuevas appealed his conviction to the Appellate Division, which affirmed without opinion. Leave to appeal to the New York Court of Appeals was denied.

In his habeas petition to the district court, Cuevas argued that he was denied a fair trial because of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; and (3) an improper charge to the jury, and that his conviction was, therefore, unlawful.

The district court decided that Cuevas had exhausted his state court remedies as to his federal constitutional claims as required by *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The court then concluded that defense counsel's failure to object to the introduction of evidence regarding identification procedures, the admission of Cuevas' statements made after his arrest and the prosecutor's summation restricted the court's review. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The court then held, however, that defense counsel had met the standard of "reasonably effective assistance" of counsel set out by *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and that Cuevas could not, therefore, rely on ineffectiveness of counsel to satisfy his burden of proving cause for his failure to adhere to New York's contemporaneous objection rules. Because of this procedural default, the court denied Cuevas' request for the writ. The district court subsequently granted a certificate of probable cause for appeal. Fed.R.App.P. 22(b).

## DISCUSSION

We agree with the district court that Cuevas exhausted his state court remedies as to his federal constitutional claims as required by *Rose v. Lundy*. We are also satisfied that the failure to object in a timely fashion to the introduction of preju-

dicial evidence and to the prosecutor's summation as required by the New York state contemporaneous objection rules constitutes a procedural default barring habeas review under *Wainwright v. Sykes* unless Cuevas can demonstrate cause and actual prejudice. *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982).

On appeal Cuevas argues that defense counsel's performance at trial was so inadequate that it constitutes both cause for Cuevas' procedural default and grounds for issuance of the writ.

In reviewing defense counsel's performance as a whole, we conclude that Cuevas has failed to prove constitutional ineffectiveness here and, thus, he has failed to establish cause for his procedural default. As the Supreme Court recently stated, it is not sufficient to show defense counsel's failure to "recognize the factual or legal basis for a claim, or [his failure] to raise the claim despite recognizing it." *Murray v. Carrier*, —— U.S. ——, ——, 106 S.Ct. 2678, 2682, 91 L.Ed.2d 397, 434 (1986). "So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington* ... we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." *Murray*, —— U.S. at ——, 106 S.Ct. at 2682.

Under *Strickland*, a petitioner alleging ineffectiveness of counsel must show (1) that counsel's performance was so deficient and counsel's errors were so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) that counsel's deficient performance prejudiced petitioner's defense so seriously that it "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The Court held that the proper standard is that of reasonably effective assistance of counsel, considering all of the circumstances at the time the claimed errors occurred. *Id.* at 688, 104 S.Ct. at 2065. The Court further recognized the existence

of a strong presumption that counsel's conduct fell within the wide range of reasonable assistance. Obviously, considering the distorting effects of hindsight, the Court held that the defendant must overcome the presumption that under the circumstances the challenged actions "'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

Cuevas argues that the totality of the errors committed by defense counsel in his trial affected the outcome, thereby rendering his counsel's conduct unreasonable and prejudicial. It has been argued with some force that counsel's conduct was not justified as sound trial strategy. But, "we have repeatedly noted our reluctance to second-guess matters of trial strategy simply because the chosen strategy was not successful." *Trapnell v. United States,* 725 F.2d 149, 155 (2d Cir.1983).

Cuevas points to several instances of alleged ineffectiveness, which we discuss in turn. We then review counsel's performance as a whole.

On cross-examination of police officer Mercurio, defense counsel "opened the door" to the introduction of identification evidence damaging to Cuevas' defense when he asked Officer Mercurio whether any photographs had been shown to the victim, Ms. Pappas. Mercurio answered that he had shown her sixty photographs on August 26. Tr. 84. On redirect examination, the prosecutor asked Mercurio about the photographs. Defense counsel objected but the objection was overruled because it was he who had "opened the door" to questions about the photos. Tr. 96. In response to the prosecutor's questions, Mercurio then testified that Pappas had identified Cuevas' photo and the prosecutor introduced the photo into evidence.

■ With the benefit of hindsight it is clear that the introduction of testimony concerning the photo identification hurt rather than helped Cuevas' case. It appears from defense counsel's summation, however, that this line of questioning was a matter of strategy.[1] Counsel was attempting to blunt the force of Pappas' strong identification testimony by showing that her in-court testimony was based not on her memory of her assailant, but rather on the photo of Cuevas she had been shown. His apparent goal was to create an element of doubt as to the accuracy of this eighty-one year old victim's identification.

Counsel also asked Mercurio on cross-examination if Cuevas had a weapon when he was arrested and Mercurio said "no." Tr. 95. On redirect, the prosecutor then elicited testimony from Mercurio that Cuevas was arrested in the criminal court building, Tr. 98, assertedly to explain why Cuevas had no weapons when he was arrested. *See* State's Appellate Division Brief at 19; Br. of Appellant at 6.

■ Defense counsel's questions to Mercurio about Cuevas' possession of a weapon immediately followed questions about the knife used in the crime.[2] It was not unrea-

---

1. The summation included the following:

    Let me say this, let me get into the testimony. You remember Mrs. Pappas got on the witness stand, an eighty-one year old woman. What did she say? Remember she said she went to the hospital which was unquestionably true but that she had seen doctors and doctors and doctors, but don't you recall that she testified before the Grand Jury as well as here and that she had heart trouble and emphysema and let me say this, she had some kind of a gas flowing into the room and that's why she opened the door. Now, if she had that happen and her mind she claimed was being in some way harmed, do you think then that she could go in there and see the person in the point of identifying him, or was it the

    fact that she is shown a picture by the Detective and felt, well, that is the fellow that did it? Now, you heard her testifying that that was how she identified him.
    Tr. 353–54.

2. Q. You had nothing in the matter of identity of the defendant other than what was testified to by the—Mrs. Pappas as far as he was supposed to have that knife; is that correct?
    A. That's correct.
    Q. And when you picked him up or when you found him, did he have a knife on him?
    A. No, he did not.
    Q. Did he have a gun on him?
    A. No, he did not.

sonable for counsel to try to show that Cuevas did not carry such a knife. When the prosecutor on redirect attempted to use these questions as an excuse to get before the jury the fact that Cuevas was in the criminal court building at the time of his arrest, defense counsel objected vigorously, but to no avail. There was little more that defense counsel could have done at that point to protect his client.

Cuevas next alleges that his counsel was ignorant of the law under *People v. Dawson,* 50 N.Y.2d 311, 428 N.Y.S.2d 914, 406 N.E.2d 771 (Ct.App.1980), as it pertains to the treatment of alibi testimony. As a consequence, according to Cuevas, his counsel failed to argue that the prosecutor had not laid a proper foundation for cross-examination of Cuevas' alibi witnesses and did not request a bench conference to discuss whether the alibi witnesses had refrained from speaking to police on the advice of counsel.

Under *Dawson,* a prosecutor lays a proper foundation for impeachment of alibi witnesses by "demonstrating that the witness was aware of the nature of the charges pending against the defendant, had reason to recognize that he possessed exculpatory information, had a reasonable motive for acting to exonerate the defendant and, finally, was familiar with the means to make such information available to law enforcement authorities." 428 N.Y.S.2d at 921 n. 4, 406 N.E.2d at 777 n. 4. The record indicates that each witness was asked whether on or about August 27 she knew that charges had been filed against Cuevas, that the crime had been committed and that the police or the district attorney handled these matters. Each was also asked whether she had a relationship with Cuevas which would supply a motive for acting to exonerate him. After securing affirmative replies to these questions from each of the witnesses, the prosecutor then asked each witness about her failure to come forward to the authorities and asked whether anyone had told the witness not to talk with

the police or other authorities before trial. A proper foundation had been laid.

■ Once a proper foundation has been laid, *Dawson* holds that a prosecutor may cross-examine a defense witness about a failure to come forward with exculpatory information for the purpose of impeaching the alibi witness' credibility. *Id.* at 921, 406 N.E.2d at 777. Under the facts in this case, there was no basis for any objection by defense counsel because such a foundation for impeachment had been laid. Thus, Cuevas' claim that counsel was incompetent because he failed to move to strike the testimony or to request a mistrial is without merit.

■ Cuevas next claims that his counsel should have requested a bench conference to ascertain whether the witnesses had failed to come forward on the advice of counsel. Under *Dawson,* it is the trial judge, not the attorney, who must exercise his discretion "to ensure that the jury is not misled by the [prosecutor's] efforts to impeach the credibility of a defense witness' testimony." *Id.* at 922, 406 N.E.2d at 778. Moreover, *Dawson* indicates that when such impeachment questioning begins, it is the trial judge who should call a bench conference. *Id.* Since appellant is not challenging the state trial court's actions, we see no basis for the claim that the failure of his attorney to request a bench conference was proof of incompetence and ignorance of the law.

■ Cuevas also claims that counsel should have requested a curative instruction on the rule that a witness has no obligation to volunteer exculpatory information. *Dawson* does not mandate that trial counsel seek such an instruction but only states that the judge should give such an instruction if requested. *Id.* Counsel's failure to make such a request did not rise to the level of constitutional ineffectiveness.

Q. Did he have anything that was criminal on him?

A. No, he did not.
Tr. 94–95.

■ A bit more troubling is Cuevas' claim that counsel abandoned his efforts on direct examination of two alibi witnesses to elicit "the evidence that the witnesses spoke to the police when the officers came to see them and that they believed this to be an appropriate method of communicating [with the police]" because the prosecutor objected that this line of inquiry was improper bolstering. Br. of Petitioner-Appellant at 28. Also troubling is counsel's failure to ask the alibi witnesses on redirect examination why they did not come forward with their information. Cuevas maintains that this failure was attributable to counsel's ignorance of *Dawson*'s rule that explanations for delay are appropriate. *People v. Dawson*, 428 N.Y.S.2d at 921, 406 N.E.2d at 777. However, counsel may have failed to question the alibi witnesses on direct and redirect examination because, in fact, there was no good reason for their delay in coming forward. The record provides no reason to believe that the unasked question would have produced an answer helpful to Cuevas. Therefore, failure to ask this question cannot be the basis for an ineffectiveness claim.

Finally, Cuevas argues that his counsel's failure to make appropriate objections to the prosecutor's summation was misguided and prejudicial. In summation, the prosecutor commented about the alibi witnesses as follows:

> They all say they learned of the defendant's arrest on August 27th just two days after the crime and they all say he [sic] knew he was innocent. So what did they do about it? *The law doesn't require anybody who has information about a crime to come forward.*
>
> . . . .
>
> [D]id they ever come forward? No. And why not? Because it is a recent fabrication. It wasn't true. There was no alibi.

Tr. 389 (emphasis added).

■ The prosecutor's summation was appropriate, especially in view of his explicit reference, italicized above, to the rule of law stated in *Dawson*. *See* 428 N.Y.S.2d at 918, 406 N.E.2d at 774. Therefore, defense counsel's failure to object does not support a conclusion that his performance was not reasonably competent. *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064; *see, e.g., Trapnell v. United States*, 725 F.2d 149, 155 (2d Cir.1983) (standard for competency of counsel in a criminal trial is "reasonably competent assistance.").

■ On the facts of this particular case, we conclude that trial counsel's performance did not deny Cuevas the effective assistance of counsel. Recognizing that our scrutiny of counsel's performance must be "highly deferential," *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, and that "it is all too easy for [us], examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," *id.*, we hold that Cuevas has failed to overcome the strong presumption that his counsel's conduct fell within the "wide range of reasonable professional assistance." *Id. Cf. Engle v. Isaac*, 456 U.S. 107, 133–34, 102 S.Ct. 1558, 1574–75, 71 L.Ed.2d 783 (1982).

## CONCLUSION

■ Viewing the record as a whole, as we must, we conclude that the evidence of identification, particularly the in-court identification by Ms. Pappas, was so strong and substantial and the alibi evidence so insubstantial, that there was no "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068. Therefore, Cuevas has failed to satisfy *Strickland*'s standard of prejudice. Because Cuevas has failed to show that defense counsel's performance at trial was constitutionally ineffective, he has failed to establish cause to excuse him from the procedural default bar of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and *Murray v. Carrier*, —— U.S. ——, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986). Consequently, we affirm the district court's denial of the petition for a writ of habeas corpus.