**Garden LAWSON, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 86 Civ. 7816.**

United States District Court, S.D. New York.

Nov. 19, 1986.

Garden Lawson, pro se.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City, for U.S.; Edward E. McNally, Asst. U.S. Atty., of counsel.

EDWARD WEINFELD, District Judge.

Petitioner, Garden Lawson, now appearing pro se, following the affirmance of his conviction for conspiracy to import and the importation of heroin and the denial of certiorari by the Supreme Court of the United States, moves pursuant to 28 U.S.C. § 2255 to vacate the judgment of conviction upon three claims:

(1) ineffective assistance of counsel based upon counsel's alleged failure to present exculpatory evidence to the jury;

(2) denial of a fair trial by an impartial jury because of this Court's announcement to the jury of the arrest of the Assistant United States Attorney who commenced but did not complete the trial; and

(3) petitioner's failure to "intelligently" waive his constitutional rights when he signed a waiver following his arrest and prior to making incriminatory statements.

Familiarity is assumed with the trial and appellate records. Lawson had received in Hong Kong, from one George Louise, four canisters which Lawson was to deliver in New York City to a person whom he was to contact there. The evidence established that the canisters contained heroin of great purity, 91.2%. Petitioner had flown the them from Hong Kong to Seattle, Washington. When searched at the airport, they were found stuffed in his underwear.[1] Following his arrest and after *Miranda* warnings Lawson agreed to cooperate with the authorities. Several days later he made a controlled delivery in New York to Milan Lama, who was named and convicted as a codefendant. Lawson denied he knew that the canisters contained heroin. He testified he was told by Louise that the contents of the canisters were cancer medicine, and that he specifically asked Louise if the substance was heroin, cocaine, opium, "or anything like that" and was absolutely assured by Louise it was medicine.[2] The jury was instructed to acquit the defendant if it found that the government had failed to establish its burden of proof that Lawson knew the illicit nature of the contents of the canisters.[3] The jury's verdict indicated Lawson's claim was rejected.

Petitioner's initial claim is that his trial lawyer failed to present to the jury exculpatory evidence, consisting of cancer medicine literature found during a search of George Louise's hotel room upon his arrest in Hong Kong. The search also turned up heroin, cocaine, hashish and a number of financial records suggestive of narcotic transactions. The information was furnished to the defense as Brady material.[4] Petitioner's trial counsel, John P. Curley, Esq.[5] sought a stipulation with respect to the cancer medicine material found in the room in Hong Kong. The government was agreeable to a stipulation upon condition that it extend to the other materials found in the room—that is, the heroin, cocaine, hashish and financial records. This Court observed that the two types of evidence could not be separated since they were the fruits of a single search. Attorney Curley declined the government's offer to stipulate to all materials found in the room. Thus, the jury was not informed of the cancer medicine literature, which petitioner now contends deprived him of exculpatory evidence, and hence he was denied competent representation by counsel with consequent denial of a fair trial.

A preliminary bar to relief to this claim is that it was raised by petitioner on appeal. He filed a pro se supplemental brief with the Court of Appeals in which, in part, he argued that he was denied a fair trial because, "The fact that cancer literature was found at the scene of Mr. George Louise's arrest was not presented to the jury." Thus, the issue was before the Court of Appeals and, while the Court in its disposition made no specific reference to this contention, it is evident that it was rejected. In case it is argued that the claim was not clearly articulated upon appeal, the Court finds that, in any event, it is without merit.

Analysis of petitioner's charge that he was denied effective trial representation by his counsel starts with a strong presumption that counsel did render ade-

---

1. Tr. at 277–83.

2. Tr. at 272–73.

3. Tr. at 421–22.

4. Tr. at 334.

5. Attorney-in-charge, Criminal Defense Division of Federal Defender Services Unit of The Legal Aid Society.

quate and reasonable representation.[6] In the bellwether case of *Strickland v. Washington*,[7] the Supreme Court stated that, "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[8] The Court held that to sustain his charge a defendant must establish two components: "First, the defendant must show that counsel's performance was deficient.... that counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and second, "that the deficient performance prejudiced the defense,"—a showing that the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[9] The test is not one of hindsight or Monday morning quarterbacking; it is an objective one. The reasonableness of counsel's challenged conduct must be judged on the particular facts of the case viewed from counsel's perspective at the time.[10] Thus, to overcome the presumption that his counsel's conduct was reasonable, the defendant must show that: (1) the representation fell below an objective standard of reasonableness under prevailing professional norms; and (2) there is a reasonable probability that except for counsel's unprofessional errors the result of the trial would have been different.[11]

■ Applying the foregoing standards, it may simply be said that not only has the petitioner failed to meet his burden of proof, but, contrary to his claim, his counsel's trial performance reflected a solid judgment in the protection of defendant's interests. Had counsel entered into the stipulation, which the government properly required, that included reference to all ma-

terial found in Louise's hotel room, including the heroin, cocaine and marijuana, in addition to the cancer medical material, it cannot be questioned that it would have had a devastating impact upon and undermined petitioner's testimony of innocence as to the illicit nature of what he had received from Louise for transportation from Hong Kong and delivery to the United States. A juror readily could have inferred that the "medicine" story was a contrived cover-up to be advanced by a conspirator who was apprehended with the heroin on his person.

Attacks upon the competency of trial counsel following conviction of a defendant and after affirmance upon appeal have become fairly commonplace. That a defendant receive a fair trial and adequate and effective trial representation is a treasured constitutional mandate, and the right of defendant to question that he was accorded such a trial is cardinal to our system of justice. However, there are cases where such a charge is baseless. This is one such case. Curley, petitioner's counsel, an experienced and able trial attorney, not only fully measured up to his responsibility of adequate and effective trial representation of petitioner, but in the light of overwhelming evidence against Lawson and his codefendant, Lama, he rendered conspicuous service in every aspect of the case—trial preparation, a motion to suppress, examination and cross examination of witnesses, and summation. With respect to the charge now levelled against him, he made a wise judgment. Nonetheless he is now charged by his former client with incompetency. Lawyers who have rendered the ultimate of dedicated service to their client's cause must accept without demur that a disappointed and unsuccessful de-

---

6. *Strickland v. Washington*, 466 U.S. 668, 689–90, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674 (1984).

7. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

8. *Id.* at 686, 104 S.Ct. at 2064.

9. *Id.* at 687, 104 S.Ct. at 2064.

10. *Id.* at 690, 104 S.Ct. at 2066.

11. *United States v. Cruz*, 785 F.2d 399, 405 (2d Cir.1986); *United States v. Bari*, 750 F.2d 1169, 1182 (2d Cir.1984), *cert. denied sub nom. Benfield v. United States*, — U.S. ——, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985).

fendant, found guilty of a serious crime, will, in a final effort to escape just punishment, level against them the ugly charge of incompetency and lack of adequate representation. It is the price that conscientious lawyers must accept as part of professional life, no less than public officers, including judges who are subjected to similar perjorative charges.[12]

The next contention of the petitioner is that he was deprived of a fair trial because this Court informed the jury that the Assistant United States Attorney, who was in charge of and had commenced the trial, had been arrested for the theft of heroin, the very heroin that was the subject of the indictment. Again, a threshhold objection is made by the government that the claim is not properly before this Court because: (1) no objection was made at the trial proper, and (2) petitioner's pro se brief on appeal presented the issue to the Court of Appeals and was decided adversely to his claim, or that he failed to raise his claim on direct appeal and thus waived it. While there is substance to this procedural contention, the Court believes the claim should be decided upon the merits.

When the dereliction of the Assistant United States Attorney was called to this Court's attention, the trial was in its second day, and except for one witness, a chemist, the government was ready to rest its case. Before resuming the trial, the Court conferred with the United States Attorney and defense counsel. It was decided to continue the trial but to grant an adjournment of three days to enable another Assistant to familiarize himself with the record. The Court, after advising the jury of events,[13] gave the following cautionary instruction to the jury:

It is likely that there will be publicity with respect to what has developed. I urge upon you as strongly as words can convey meaning to you that whatever publicity may come to your attention, to disregard it with respect to the issues in this case. Such publicity may play no part in your continued service as jurors in the trial of this case.

As I repeatedly told you during the process of your selection as jurors, the issues in this case must be decided solely and only upon the evidence presented in this courtroom—what you have already heard from the lips of the witnesses who have testified or may hereafter testify, and such exhibits that have been admitted or may be admitted in evidence as the trial continues.

Extraneous matters, referring of course to publicity with respect to this unfortunate situation, must play no part in your judgment or consideration of the case. [I] again repeat my instruction to you given at the very start of the trial and repeated during the course of the trial that you are not to discuss any aspect of this case among yourselves or with any person or allow anybody to talk to you about the case. You must keep your minds free and clear of all extraneous matter.

Your ultimate judgment when the case is finally submitted for your consideration must be based upon the evidence presented in this courtroom and such appraisal as you may make of that evidence in accordance with the Court's instructions as to the law.[14]

When the trial resumed three days later, this Court made the following remarks and inquired of the jurors as follows:

Members of the jury, when we adjourned the other day I gave you a specific instruction with respect to the likely publicity in this case. There has been such

---

**12.** *Cf. Adey v. United Action for Animals, Inc.,* 361 F.Supp. 457 (S.D.N.Y.1973) ("Men in public life, whether they be judges, legislators, executives or scientists, must accept as an incident of their service harsh criticism, ofttimes unfair and unjustified—at times false and defamatory.... While it is not pleasant ... [they] must be 'able to thrive in a hardy climate....' "), *aff'd,* 493 F.2d 1397 (2d Cir.), *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974).

**13.** Tr. at 136–37.

**14.** Tr. at 137–38.

publicity. I want to put a question to each one of you, and of course I expect a forthright truthful answer.

Is there anything about the publicity that you may have heard or read which in any respect would cause you to have any prejudice against the government or any prejudice against the defendants? And is each one of you able to represent and state to me that whatever appeared in no respect would influence your judgment in the determination of the fact issues in this case, and that you will decide the fact issues solely and only on the testimony presented in this court, that is the evidence in this court, the oral testimony and the exhibits, and in accordance with the Court's instructions as to the law. Is each one of you able to make such a representation to me, in short, that there is nothing to impede your ability to sit as fair and impartial jurors in the trial of this case? [15]

The Court then questioned each juror separately as to his or her ability to continue to serve impartially in light of the original Assistant prosecutor's conduct. Each answered "I can be impartial." [16]

■ The trial then proceeded without objection. In the light of the foregoing, the instant claim is frivolous. It must be presumed that each juror not only followed the Court's instruction,[17] but also adhered to his or her specific and solemn representation of impartiality and capacity to render a verdict solely on the evidence. Moreover, if anything, the incident was potentially dangerous to the government since the Assistant United States Attorney, then trying a narcotics violation case, was accused of the theft of the heroin that was the subject of the indictment. In fact, it was the concern of the prosecution that the incident was inherently prejudicial to the prosecution that led to the voir dire of the jurors to obtain assurance of their ability to continue as impartial jurors.

15. Tr. at 154–55.

16. Tr. at 155–56.

■ Finally, petitioner contends that when he signed a waiver after the *Miranda* warning he did not know the consequences. Petitioner was born in England but lived in Canada for most of his adult life and speaks English fluently. Other than his mere assertion, no evidential matter is submitted to sustain his claim. Prior to trial petitioner moved to suppress inculpatory statements he had made following his arrest. An evidentiary hearing was conducted at which petitioner and a Drug Enforcement agent, who questioned petitioner in New York City after petitioner had offered to cooperate, testified. The Court then made the following findings of fact:

As to defendant Lawson, the Court finds that he was read his *Miranda* rights, *Miranda v. Arizona*, 384 U.S. 436, 467–73 [86 S.Ct. 1602, 1624–27, 16 L.Ed.2d 694] (1966), upon his arrest in Seattle, Washington and again in New York City, before he was interviewed by DEA Agent Hubbard; that he fully understood his rights; and that he voluntarily and intelligently waived them. Indeed, Lawson conceded that he agreed to be interviewed by Agent Hubbard because he wanted to cooperate as fully as he could. Record at 65. Furthermore, in Seattle, Lawson signed a cooperation agreement with the Government in which he acknowledged that he would be prosecuted for his alleged conduct but expressly waived his *Miranda* rights as well as his right to a prompt arraignment before a United States Magistrate pursuant to Fed.R.Crim.P. 5(a). Gov't exhibit 10. In any event, a delay in arraigning a defendant does not require, but merely permits, exclusion of inculpatory statements made voluntarily by him. *See United States v. Perez*, 733 F.2d 1026 (2d Cir.1984); *United States v. Johnson*, 467 F.2d 630, 637 (2d Cir.1972), *cert. denied*, 413 U.S. 920 [93 S.Ct. 3069, 37 L.Ed.2d

17. *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6, 103 S.Ct. 843, 853 n. 6, 74 L.Ed.2d 646 (1983); *Parker v. Randolph*, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979).

1042] (1973). In essence, Lawson's real claim is that he never made the alleged inculpatory statement to Agent Hubbard, despite the latter's testimony to the contrary, and that, in view of this dispute and the critical testimony to the contrary, and that, in view of this dispute and the critical importance of the alleged statement on the issue of Lawson's guilty knowledge, it should be suppressed. This claim, however, is merely an attack on the credibility of Agent Hubbard and not on the admissibility of Lawson's alleged statement. As such, it is to be resolved by the jury upon the trial.[18]

The jury resolved the issue adversely to petitioner. Nothing has been presented to impugn the integrity of that finding.[19]

The application is denied in all respects.

18. Memorandum Endorsement, *United States v. Lama,* et al., 85 Crim. 403 (EW) (May 31, 1985).

19. *See United States v. Hall,* 724 F.2d 1055, 1060 (2d Cir.1983) ("a district court's finding of waiver 'is to be upheld if any reasonable view of the evidence supports it' and 'any specific findings of fact made after a hearing are binding unless clearly erroneous.'") (citing *United States v. Kiendra,* 663 F.2d 349, 351 (1st Cir.1981).