**Vicente DeARMAS, Petitioner,**

v.

**PEOPLE OF the STATE OF NEW YORK, Respondent.**

**No. 90 Civ. 0487 (SWK).**

United States District Court,
S.D. New York.

Oct. 1, 1992.

Vicente DeArmas, pro se.

Tyrone Mark Powell, Asst. Atty. Gen., New York City, for respondent.

## ORDER ACCEPTING MAGISTRATE'S REPORT AND RECOMMENDATION

KRAM, District Judge.

This Court has received and reviewed the Report and Recommendation issued by Magistrate Judge Grubin dated February 19, 1991 in the above-captioned action. No timely objections to the Report and Recommendation have been made by the parties to this action. *See* Fed.R.Civ.P. 72(b). The Court has considered the Report and agrees with its recommendation to deny petitioner's application for a writ of habeas corpus. Accordingly, it is hereby

ORDERED that the Report and Recommendation issued by Magistrate Judge Grubin dated February 21, 1991 is accepted in accordance with 28 U.S.C. § 636(b); and it is further

ORDERED that petitioner's application for a writ of habeas corpus is denied.

SO ORDERED.

## REPORT AND RECOMMENDATION TO THE HONORABLE SHIRLEY WOHL KRAM

GRUBIN, United States Magistrate Judge:

Petitioner *pro se* seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction entered upon a jury verdict in the New York State Supreme Court, New York County, for criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02(4)) (McKinney 1989). On March 25, 1988, he was sentenced to a prison term of three and one-half to seven years to be served concurrently with a sentence of one to three years for violating the conditions of probation

imposed upon him in an earlier case and consecutively with a sentence of one and one-half to three years for bail jumping in the instant case.

On June 15, 1989, the Appellate Division, First Department, affirmed the judgment of conviction without opinion, *People v. DeArmas*, 151 A.D.2d 1053, 544 N.Y.S.2d 405 (1st Dept.1989). On August 17, 1989, leave to appeal to the New York State Court of Appeals was denied by Judge Hancock, *People v. DeArmas*, 74 N.Y.2d 807, 546 N.Y.S.2d 565, 545 N.E.2d 879 (1989).

The issues presently before the court are whether petitioner was denied the effective assistance of counsel and whether the sentence imposed upon him by the trial court was excessive. I recommend that your Honor deny the petition for the reasons that follow.

## FACTUAL BACKGROUND

Petitioner's conviction arises from an argument with his girlfriend on a street during the course of which he brandished a loaded pistol. Viewing the facts in the light most favorable to respondent, *see, e.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Reddy v. Coombe*, 846 F.2d 866, 869 (2d Cir.), *cert. denied*, 488 U.S. 929, 109 S.Ct. 316, 102 L.Ed.2d 334 (1988); *Garcia v. Warden*, 795 F.2d 5, 6 (2d Cir.1986), the evidence at trial established the following:

Between 11 p.m. and midnight on February 1, 1986 Mr. Willie Ford was in his home "watching t.v. and listen[ing] to the altercations going on in the street" when he heard and observed through a window petitioner and a woman embroiled in a loud argument on the street directly in front of his house (Tr. 13–17).[1] The street was lighted by a street light near the front of Mr. Ford's house (Tr. 17, 39). A second man was also present outside and was standing near petitioner and the woman (Tr. 15). Petitioner was approximately twenty to thirty feet from Mr. Ford (Tr. 17–18). Mr. Ford saw petitioner pull out a pistol from his coat pocket and, during the course of the argu-

ment, "swing it back and forth" for a period of ten or fifteen minutes (Tr. 18–21). According to Mr. Ford, petitioner did not point the gun directly at the woman (Tr. 21). He then saw petitioner place the pistol on the ground near the left rear tire of a car parked immediately next to where he was standing (Tr. 27, 28, 55), and three to five seconds thereafter saw a police patrol car arrive on the scene (Tr. 29–30), at which time Mr. Ford telephoned 911 to inform the officers in the patrol car that petitioner had hidden the gun under the car (Tr. 30–31). Shortly thereafter, a second patrol car arrived and the officers from that patrol car immediately looked under the parked car, where they found the gun (Tr. 31–33, 54–55). The gun was loaded (Tr. 56). After speaking with the additional man who had witnessed the argument, the police officers in the second car, Officers Henry and Connolly, placed petitioner under arrest (Tr. 78).

### Ground One

Petitioner's first claim is that his right to the effective assistance of counsel, guaranteed by the Sixth Amendment, was violated.

The Supreme Court set forth the standards for evaluating a claim of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and has reaffirmed them in *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985), *Kimmelman v. Morrison*, 477 U.S. 365, 374–75, 106 S.Ct. 2574, 2582–83, 91 L.Ed.2d 305 (1986) and *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986). *See also United States v. Perez*, 904 F.2d 142, 151 n. 3 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 270, 112 L.Ed.2d 226 (1990); *Tsirizotakis v. LeFevre*, 736 F.2d 57, 62–63 (2d Cir.), *cert. denied*, 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984); *Matos v. Miles*, 737 F.Supp. 220, 221 (S.D.N.Y.1990); *Arce v. Smith*, 710 F.Supp. 920, 924–25 (S.D.N.Y.), *aff'd*, 889 F.2d 1271 (2d Cir.1989), *cert. denied sub nom. Arce v. Berbary*, 495 U.S.

---

**1.** "Tr." followed by numerals refers to page numbers of the transcript of petitioner's trial.

937, 110 S.Ct. 2185, 109 L.Ed.2d 513 (1990). Because the purpose of the Sixth Amendment's requirement of effective assistance of counsel is to ensure a fair trial, "[t]he essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison,* 477 U.S. at 374, 106 S.Ct. at 2582. *See also Strickland v. Washington,* 466 U.S. at 686, 104 S.Ct. at 2063; *United States v. Ditommaso,* 817 F.2d 201, 215 (2d Cir.1987). *See United States v. Matos,* 905 F.2d 30, 32 (2d Cir.1990); *Arocena v. United States,* 721 F.Supp. 528, 534 (S.D.N.Y.1989), *aff'd,* 902 F.2d 1556 (2d Cir.), *cert. denied,* 496 U.S. 938, 110 S.Ct. 3219, 110 L.Ed.2d 666 (1990).

■ The Court explained in *Strickland* that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating two elements. *See also United States v. Aiello,* 900 F.2d 528, 532 (2d Cir.1990); *Abdurrahman v. Henderson,* 897 F.2d 71, 74 (2d Cir.1990); *Cuevas v. Henderson,* 801 F.2d 586, 589 (2d Cir.1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987); *Mitchell v. Scully,* 746 F.2d 951, 954 (2d Cir.1984), *cert. denied,* 470 U.S. 1056, 105 S.Ct. 1765, 84 L.Ed.2d 826 (1985); *Udzinski v. Kelly,* 734 F.Supp. 76, 82 (E.D.N.Y.1990); *Benedict v. Henderson,* 721 F.Supp. 1560, 1562 (N.D.N.Y.1989), *aff'd,* 904 F.2d 34 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990); *Arocena v. United States,* 721 F.Supp. at 533; *Lawson v. United States,* 648 F.Supp. 378, 380 (S.D.N.Y.1986). First, he must show not simply that his counsel erred, but that the errors were not within the realm of reasonableness under the professional norms prevailing at the time of trial. *Strickland v. Washington,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65. Although the Court has not established specific guidelines for evaluating the reasonableness of counsel's actions, there is to be applied a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that counsel has "made all significant decisions in the exercise of rea-

sonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). *See also Mills v. Scully,* 826 F.2d 1192, 1197 (2d Cir.1987); *Cuevas v. Henderson,* 801 F.2d at 589–90.

The Second Circuit has repeatedly instructed that "we will not second-guess trial counsel's defense strategy simply because the chosen strategy has failed," *United States v. Ditommaso,* 817 F.2d at 215; *see also United States v. Aiello,* 900 F.2d at 532–33; *Mills v. Scully,* 826 F.2d at 1197; *Cuevas v. Henderson,* 801 F.2d at 590; *Trapnell v. United States,* 725 F.2d 149, 155 (2d Cir.1983), and this court has stated:

> The general rule is that habeas relief will not be granted where it is shown only that there have been tactical or strategical errors of counsel, or that the case could have been better tried. *Rickenbacker v. Warden,* 550 F.2d 62, 66 (2d Cir.1976), *cert. denied,* 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977); *United States ex rel. Pugach v. Mancusi,* 310 F.Supp. 691, 716 (S.D.N.Y.1970), *aff'd,* 441 F.2d 1073 ([2d Cir.]), *cert. denied,* 404 U.S. 849, 92 S.Ct. 156, 30 L.Ed.2d 88 (1971).

*Healey v. New York,* 453 F.Supp. 14, 16–17 (S.D.N.Y.1978). *See also Cuevas v. Henderson,* 801 F.2d at 590; *Journet v. Coombe,* 649 F.Supp. 522, 524 (S.D.N.Y. 1986).

Second, the petitioner must show that his attorney's performance prejudiced his defense. Thus, if a petitioner can establish that his counsel's performance fell below the prevailing professional norms, he must also show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068. *See also Kimmelman v. Morrison,* 477 U.S. at 375, 106 S.Ct. at 2582; *United States v. Jones,* 900 F.2d 512, 519 (2d Cir.),

cert. denied, — U.S. —, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990); *United States v. Reiter*, 897 F.2d 639, 645 (2d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990); *Whaley v. Rodriguez*, 840 F.2d 1046, 1050 (2d Cir.), *cert. denied*, 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 360 (1988); *United States v. Ditommaso*, 817 F.2d at 215; *Solomon v. Harris*, 749 F.2d 1, 2 (2d Cir.1984), *cert. denied*, 470 U.S. 1087, 105 S.Ct. 1851, 85 L.Ed.2d 149 (1985); *Mitchell v. Scully*, 746 F.2d at 954; *Benedict v. Henderson*, 721 F.Supp. at 1560. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. A petitioner cannot satisfy this second prong of the analysis by showing only that counsel's errors had "some conceivable effect" on the result, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693, 104 S.Ct. at 2067. Rather, a petitioner must demonstrate that absent counsel's errors, "the decision reached would reasonably likely have been different," considering the totality of the evidence. *Id.* *See also United States ex rel. Roche v. Scully*, 739 F.2d 739, 742–44 (2d Cir.1984). Although analysis of an ineffective assistance claim involves the two elements of counsel's error and petitioner's prejudice, as a petitioner making the claim must meet the burden of establishing both, it is not necessary for a reviewing court to address both elements if the petitioner makes an insufficient showing on either one. *Strickland v. Washington*, 466 U.S. at 697, 104 S.Ct. at 2069. *See also United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987); *Mitchell v. Scully*, 746 F.2d at 954.

### A.

■ Petitioner's first claim of ineffective assistance of his trial counsel is based on several occurrences. The first is the following questioning by petitioner's attorney on cross-examination of Officer Henry:

Q: Now that radio transmission was man with a gun, was that your radio transmission?

A: To the best of my knowledge that was the—That's roughly what it was, right.

(Tr. 63). According to petitioner, this question improperly "opened the door" for the prosecutor to elicit on redirect examination of the next officer to testify, Officer Connolly, the answer, "It was a radio run that there was a gun placed under a vehicle and the defendant had placed the gun there" (Tr. 73) in response to the question, "[W]hat were the circumstances under which you arrived at that particular location?" (*Id.*).

Petitioner has presented neither factual grounds nor legal authority for his assertion that either the prosecutor's question or Officer Connolly's answer was improper. My review of the record convinces me that the question asked of Officer Henry by petitioner's counsel did not "open the door" so as to allow Officer Connolly to testify about the presence of the gun or the identity of the person who had brandished it. Indeed, the prosecutor's question about the circumstances under which Officer Connolly arrived at the scene was a proper one that could have been asked in any circumstances. Therefore, the question could have been asked and the answer elicited whether or not petitioner's counsel asked Officer Henry the question at issue. Petitioner has failed to demonstrate the factual predicate for his claim, *i.e.*, that the answer elicited from Officer Connolly was admissible only as the result of the question asked of Officer Henry by petitioner's counsel on cross-examination.[2] Nor has petitioner

---

2. If petitioner is claiming that the answer was inadmissible hearsay, that claim must be rejected, for the trial court instructed the jury as follows:

By the way I should mention to the jury without getting into all the legal definitions of

hearsay and the rest of it, what the witnesses say in court is what you should consider whether it's truthful or not truthful. What's said out of court you don't consider for it's [sic] truthfulness. In this instance, what was said you don't take for it's [sic] truth. It's

shown that Officer Connolly would not have been permitted on direct examination to testify as to the facts surrounding the arrest and acquisition of the gun absent defense counsel's question.

### B.

 Petitioner next claims that his trial counsel was ineffective as a result of the alleged failure to adequately prepare for trial. As grounds for this contention, petitioner argues (1) that counsel failed to locate and present as witnesses the two police officers who arrived first on the scene and the man who stood in the street witnessing the altercation; and (2) that counsel presented a disorganized case on behalf of petitioner.

Regarding the failure to call the police officers or the eyewitness, the rule in this circuit is that "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d at 1321; *Aponte v. Scully*, 740 F.Supp. 153, 158 (E.D.N.Y.1990); *Arocena v. United States*, 721 F.Supp. at 533. Thus, "[c]omplaints of uncalled witnesses are not favored on federal habeas review." *Aponte v. Scully*, 740 F.Supp. at 158. *See United States v. Nersesian*, 824 F.2d at 1321.

Here, it is quite plausible that petitioner's trial counsel opted against calling the police officers and the eyewitness because he feared they would testify adversely to the defense. It is hardly to be expected that two police officers would offer evidence favorable to the defendant. Moreover, in light of the fact that the police arrested petitioner immediately after they interviewed the eyewitness, it is likely that he had in fact implicated petitioner. Petitioner's counsel's tactical choice in determining whether to call those witnesses cannot be the basis for a finding of ineffectiveness. Petitioner does not indicate how he would have expected these witnesses to testify nor how he was prejudiced by the failure to call as witnesses three persons who we have every reason to believe would have given testimony favorable to the the prosecution.

 Petitioner's claim that his attorney was unprepared and disorganized is similarly without merit. He has failed to demonstrate a reasonable probability that absent counsel's alleged unprofessional errors the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068; *Kimmelman v. Morrison*, 477 U.S. at 375, 106 S.Ct. at 2582; *United States v. Jones*, 900 F.2d at 519; *United States v. Reiter*, 897 F.2d at 645; *Whaley v. Rodriguez*, 840 F.2d at 1050; *United States v. Ditommaso*, 817 F.2d at 215; *Solomon v. Harris*, 749 F.2d at 2; *Mitchell v. Scully*, 746 F.2d at 954; *Benedict v. Henderson*, 721 F.Supp. at 1560. At best, petitioner's claim is that counsel's assertedly erroneous decisions resulted in "some conceivable effect" on the outcome of the trial. That, however, is insufficient to satisfy this second prong of the analysis, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland v. Washington*, 466 U.S. at 693, 104 S.Ct. at 2067.

Petitioner contends that counsel's examination of Ms. Garcia evidenced an unreasonable lack of preparation; in fact, he contends that his own testimony was poor-

something that's said out of Court, but you could consider it for how it related to this officer's mind, why he reacted, why he did certain things, the things that he heard whether they were truthful or not reflect on his actions and that's what you consider those out of Court statements for.
*E.g., People v. Cook*, 115 A.D.2d 240, 496 N.Y.S.2d 175, 175–76 (4th Dep't 1985), *aff'd*, 68 N.Y.2d 830, 508 N.Y.S.2d 170, 500 N.E.2d 868 (1986) (The purpose of the order broadcast to a police officer from headquarters "was to establish the fact that the dispatch order had been given and received and not to prove the truth of anything asserted in the transmission.") *See generally People v. Steele*, 162 A.D.2d 128, 556 N.Y.S.2d 564, 564–65 (1st Dep't), *lv. denied*, 76 N.Y.2d 866, 560 N.Y.S.2d 1005, 561 N.E.2d 905 (1990); *People v. Cassanova*, 160 A.D.2d 394, 554 N.Y.S.2d 21, 23 (1st Dep't), *lv. denied*, 76 N.Y.2d 786, 559 N.Y.S.2d 991, 559 N.E.2d 685 (1990).

ly organized by his attorney. My review of the record, however, indicates that petitioner's counsel undertook a thorough defense of the case. His opening argument and summation both demonstrated his knowledge of the case. He conducted an aggressive, considered voir dire examination of Mr. Willie Ford when the prosecutor offered, by means of Mr. Ford's identification testimony, to place into evidence the pistol found under the car. The result was that the pistol was admitted, but only on the condition that the police officers later independently connect it to petitioner and the scene. Counsel made numerous other objections during Mr. Ford's testimony, some of which were sustained, thereby keeping the direct examination within its proper scope. Later, on cross-examination and re-cross, counsel vigorously sought to impeach Mr. Ford's credibility and his testimony. Under that examination, Mr. Ford refused to tell the jury whether or not he had discussed specifics of his testimony with the district attorney; ultimately he answered that he had in fact done so.

Petitioner's counsel effectively cross-examined Officer Henry concerning the reason no fingerprint analysis was done on the gun and elicited an admission from Officer Henry that his testimony was assisted from notes taken by Officer Connolly at the time of the arrest. During Officer Connolly's direct examination, counsel objected to the officer's reference to petitioner as having been specifically referred to on the radio call. As a result, the trial court instructed the jury that the reference was not specifically to petitioner and, further, defined hearsay for the jury, giving it the limiting instruction as to Officer Connolly's testimony concerning the radio call.

When petitioner testified in his own defense, counsel led him through the events of the night of February 1 and established that petitioner had not seen and was not in possession of a gun that night. On cross-examination, however, he was asked numerous questions concerning his prior conviction for selling drugs, and his direct testimony and credibility were impeached effectively by the prosecutor. Petitioner's counsel limited the prosecutor's attempt to

raise the inference that petitioner was selling drugs on February 1 and that he kept the gun to "protect [his] stash." A number of the objections made by petitioner's counsel during that cross-examination were sustained, and, after a damaging cross-examination, counsel did a reasonable job in attempting to rehabilitate his client.

Petitioner's counsel also called Ms. Mercedes Garcia, who was the woman with petitioner on February 1. Although Ms. Garcia's direct testimony was rather haphazard as a result of her difficulty in understanding some questions, she did testify, nevertheless, that petitioner did not have a gun at the date and time in question.

Midway through the trial, the court called a recess for the purpose of taking argument on the issue of whether petitioner's bail should be increased in light of (1) the strength of the case against petitioner; (2) a prior felony conviction of which the court had not been made aware and, concomitantly, the length of the sentence petitioner would have to serve if found guilty; and (3) petitioner's habit of arriving at court late despite the court's admonition against doing so. Counsel made a well-prepared, thorough and well-reasoned argument against a bail increase. Although the trial court increased the bail amount, petitioner was able to meet the bail, and petitioner's subsequent bail jumping prior to sentencing illustrates that the reason counsel was not able to convince the court that petitioner was not a risk of flight was probably not that counsel was unprepared, but that petitioner was in fact a risk of flight. In short, petitioner has failed to overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066.

*Ground Two*

■ Petitioner's second claim is that in light of his criminal record his sentence was excessive and should be reduced "in

the interest of justice." [3]

No constitutional issue is presented where a sentence falls within the range prescribed by state statutory law. *Chisholm v. Henderson,* 736 F.Supp. 444, 449 (E.D.N.Y.1990); *Underwood v. Kelly,* 692 F.Supp. 146, 152 (E.D.N.Y.1988), *aff'd,* 875 F.2d 857 (2d Cir.), *cert. denied,* 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989); *Diaz v. LeFevre,* 688 F.Supp. 945, 949 (S.D.N.Y.1988); *Castro v. Sullivan,* 662 F.Supp. 745, 753 (S.D.N.Y.1987); *Rivera v. Quick,* 571 F.Supp. 1247, 1249 (S.D.N.Y. 1983); *Reese v. Bara,* 479 F.Supp. 651, 657 (S.D.N.Y.1979).

At the time of his sentencing, petitioner was a second felony offender. Pursuant to N.Y. Penal Law § 70.06(4) (McKinney 1976), "[t]he minimum period of imprisonment under an indeterminate sentence for a second felony offender must be fixed by the court at one-half of the maximum term imposed...." Therefore, in light of the fact that the weapon possession charge was a class D felony for which the maximum sentence was seven years, *see* N.Y. Penal Law § 70.00(2)(d) (McKinney 1976), the court was required to impose a sentence of three and one-half to seven years. Because petitioner's sentence falls within the statutory range, his claim is not a cognizable constitutional issue for this court on habeas corpus review.

## CONCLUSION

For the above reasons, I respectfully recommend that your Honor deny both grounds of the petition and direct the Clerk of the Court to enter judgment dismissing it.[4]

Copies of this Report and Recommendation have been mailed this date to the following:

Mr. Vicente DeArmas

88-A-4123

Auburn Correctional Facility

P.O. Box 1

Auburn, N.Y. 10021-9600

Tyrone Mark Powell, Esq.

Assistant Attorney General

120 Broadway

New York, New York 10271

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Shirley Wohl Kram to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Kram. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir. 1983) (per curiam). *See also* Fed.R.Civ.P. 6(b), 6(e).

Dated: New York, New York

February 19, 1991

---

**3.** Contrary to petitioner's claim of a good record, the record before the court reflects that, aside from the weapon possession and bail jumping convictions arising out of the case for which he brings this petition, petitioner had been convicted of at least one felony and a number of misdemeanors, including petit larceny, possession of a forged instrument and criminal sale of marijuana.

**4.** Although petitioner has fully presented his claims herein *pro se,* he has outstanding an application for appointment of counsel on which I did not rule pending my study of the claims presented. Having thoroughly examined each of those claims, I found none to involve complex legal or factual issues. It is quite clear, moreover, that petitioner has been fully able to express himself in writing. Consequently, I determined that appointment of counsel would have been unlikely to lead to a more just determination in this case and have proceeded accordingly. *See Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170 (2d Cir.1989); *Hodge v. Police Officers,* 802 F.2d 58, 61–62 (2d Cir.1986). *See also Frazier v. Wilkinson,* 842 F.2d 42, 46–47 (2d Cir.), *cert. denied,* 488 U.S. 842, 109 S.Ct. 114, 102 L.Ed.2d 88 (1988); *Wright v. Santoro,* 714 F.Supp. 665, 666 (S.D.N.Y.), *aff'd,* 891 F.2d 278 (2d Cir.1989); *Buitrago v. Scully,* 705 F.Supp. 952, 957–58 (S.D.N.Y.1989).