Steven MITCHELL,
Petitioner-Appellant,

v.

Charles SCULLY, Superintendent,
Greenhaven Correctional Facility,
Respondent-Appellee.

209, Docket 84–2069.

United States Court of Appeals,
Second Circuit.

Argued Sept. 24, 1984.

Decided Oct. 23, 1984.

R. Nils Olsen, Jr., Buffalo, N.Y., for petitioner-appellant.

Stuart L. Sanders, Asst. Dist. Atty., New York City (Mario Merola, Dist. Atty., and Billie Manning, Asst. Dist. Atty., Bronx, N.Y.), for respondent-appellee.

Before FRIENDLY, MESKILL and PIERCE, Circuit Judges.

FRIENDLY, Circuit Judge:

Steven Mitchell appeals from an order of the District Court for the Southern District of New York which denied his petition for habeas corpus under 28 U.S.C. § 2254. The court granted leave to appeal *in forma pauperis* and issued a certificate of probable cause.

On May 10, 1978, Mitchell was charged by a grand jury in the Supreme Court for Bronx County, New York in a six-count indictment, with the crimes of first degree burglary, first and second degree robbery, first degree rape, fourth degree criminal possession of a weapon and criminal impersonation. The State alleged that on April 21, 1978, with an unknown accomplice, Mitchell gained entrance to the house of a woman by representing himself as a police officer; that once inside the house he threatened the woman with what appeared to be a pistol; that he forced her to engage in sexual intercourse with him; and that he stole a portable television, a portable radio, an electric fan and an exercise bar.

Mitchell was apprehended approximately two weeks after the crime, when the victim spotted him on the street and called the police. At his initial questioning Mitchell denied having committed the offense, claiming that he had been in the hospital on April 21. Mitchell explained that he had a colostomy that had already been operated on four times, and that he had been in the hospital for 12 to 14 days awaiting another operation; this fifth operation was not performed. Hospital records revealed that in fact Mitchell was discharged on March 27, nearly a month before the crime.

On October 20, 1978, in satisfaction of the full six-count indictment, Mitchell pleaded guilty to a charge of robbery in the first degree in violation of N.Y. Penal Law § 160.15(4). This provides:

A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:

. . . .

4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

During the allocution at Mitchell's plea hearing, the trial judge questioned Mitchell concerning the crime. When Mitchell described the theft, the following exchange occurred:

THE COURT: I see. And at the time you had what? A pistol?

DEFENDANT: No. It was a play pistol.

THE COURT: I see. But it did look like a pistol.

DEFENDANT: Yes.

Transcript of Plea Hearing at 13. In accepting the plea, the judge told Mitchell

that the sentence would be a minimum of 5 and a maximum of 15 years unless the judge determined that Mitchell was a second offender, in which case the minimum sentence would be 7½ years. The court went on to state that:

> One of the factors which has persuaded me to give you the assurance of what I consider to be a fairly lenient sentence here, for the crimes for which you're charged, is that I have learned not only from your attorney but from you in the course of earlier appearances before the Court, that sometime previous to today, you've undergone surgery, [and] that as a result of that surgery you're now equipped with a—you ha [sic] a colostomy, and you are equipped with a device to take care of what I would assume is a removal of a certain part of the bowel.

*Id.* at 15. Later the judge called Mitchell's physical condition "one of the main factors which allows me to assure you of ... such a relatively short term of years ...." *Id.* at 16. The presentence report established that Mitchell had a prior felony conviction, and the judge imposed the more severe minimum sentence that he had indicated.

Mitchell appealed his conviction. Relying on the colloquy we have quoted above, Mitchell argued that the trial court should have been alerted to the possible availability to Mitchell of the affirmative defense provided for in the text of § 160.15(4) and abused its discretion in accepting Mitchell's plea without inquiring into the matter. The appeal was denied on the grounds that by failing to challenge his plea prior to sentencing Mitchell "waived a right to claim legal insufficiency of the plea by failure to move to withdraw it or to raise a claim of the inadequacy of his counsel (*People v. Pascale*, 48 N.Y.2d 997, [425 N.Y.

S.2d 547, 401 N.E.2d 904] ...)," and that, under the circumstances, the interests of justice did not require a reversal. *People v. Mitchell*, 78 A.D.2d 608, 432 N.Y.S.2d 183 (1st Dept.1980). Leave to appeal to the New York Court of Appeals was denied.

Mitchell next collaterally attacked the conviction pursuant to N.Y.Crim.P.Law §§ 440.10 and .30. Alleging for the first time that his trial attorney never informed him of the availability of an affirmative defense to the first degree robbery charge,[1] Mitchell asserted three grounds for relief: (1) that his right to effective assistance of counsel under the Sixth Amendment was denied at the plea stage because his attorney failed to inform him of the possible affirmative defense, (2) that his right to effective assistance of counsel was denied at the appellate stage because his lawyer did not raise on appeal his claim of ineffective counsel at the plea stage, and (3) that his guilty plea was not "knowing and intelligent" because of counsel's incompetence and was thus invalid. This motion, as well as Mitchell's subsequent motions for leave to appeal to the Appellate Division and the Court of Appeals, were denied without opinion.

■ Having exhausted his available state remedies, Mitchell filed a petition for habeas corpus in the District Court for the Southern District of New York, reasserting the same three claims. The opposing papers submitted by the State included an affidavit by the attorney who had represented Mitchell at trial stating that the possibility of pleading the affirmative defense that the gun was not real had been discussed with Mitchell on at least two occasions prior to his guilty plea. The district court denied the petition without resolving the factual issue.[2] Dealing first

---

1. Establishing this affirmative defense would not have precluded conviction on the charge of second degree robbery. *See* N.Y.Penal Law § 160.15(4) ("Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree ...."). On the other hand, Mitchell also could have asserted this defense against the charge of first degree burglary, since

that statute contains the identical affirmative defense. *Id.* § 140.30(4).

2. Fully recognizing the time constraints on busy district judges, we must nevertheless remark on the number of occasions on which, as may well have been the case here, much time could have been saved by a hearing limited to one crucial issue of fact. Only two witnesses were in a position to give meaningful testimony on wheth-

with Mitchell's attack on the voluntariness of his plea, the court thought that this was procedurally barred unless Mitchell could show both "cause" and "actual prejudice" as required by *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Judge Duffy held that, even assuming that failure to have been advised of the affirmative defense constituted "cause" for Mitchell's default, there was no sufficient showing that Mitchell had been prejudiced by the error. Judge Duffy disposed of Mitchell's Sixth Amendment claim of ineffective assistance of counsel at the trial level on similar grounds. Finding the sentence negotiated by counsel to have been a favorable one, Judge Duffy held that Mitchell had not been prejudiced and thus that counsel's assistance at the trial level was not ineffective. Since there was no merit in that claim, failure to raise it on appeal could not constitute ineffective assistance. In consequence, Judge Duffy denied Mitchell's petition.

We have no difficulty in sustaining the judge's disposition of Mitchell's claim to ineffective assistance of counsel at the trial level. A strong case can indeed be made that failure to advise a criminal defendant of the availability of an affirmative defense when facts known to an attorney suggest that the defense may be meritorious does not constitute "reasonably effective assistance" when judged "under prevailing professional norms." *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984); *see also Trapnell v. United States*, 725 F.2d 149 (2d Cir.1983). However, we need not decide that issue. *Strickland* ruled that in order to prevail on an ineffective assistance claim, a defendant must show more than simply that counsel's performance was not reasonable under prevailing professional norms; in most situations, including this one, the defendant also

must "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" in the sense of being more favorable to the defendant. 104 S.Ct. 2067, 2068. In fact, Justice O'Connor noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 2070.

▮ Here there was exceedingly little likelihood that presentation of the affirmative "play pistol" defense would have succeeded with respect to the first degree robbery charge to which Mitchell pleaded guilty. Under New York law, Mitchell had the burden of persuasion with respect to this defense. *See People v. Clark*, 41 N.Y.2d 612, 616–17, 394 N.Y.S.2d 593, 597, 363 N.E.2d 319, 322 (1977), *cert. denied*, 434 U.S. 864, 98 S.Ct. 195, 54 L.Ed.2d 138 (1977); *People v. White*, 59 A.D.2d 347, 350, 399 N.Y.S.2d 660, 661 (1st Dept.1977); *cf. Patterson v. New York*, 432 U.S. 197, 207–08, 97 S.Ct. 2319, 2325–26, 53 L.Ed.2d 281 (1977) (due process permits state to require criminal defendants to bear the burden of persuasion on affirmative defenses constituting separate issues rather than negating elements of the crime). As the State points out in its brief,

> [s]ince appellant was not arrested until over a week after the crime, rather than at the scene with an inoperable gun on his person, he would have been forced to take the witness stand, and to concede the burglary and robbery, in order to present his "play pistol" claim to the trier of fact. He would then have been subject to impeachment with his video-taped statement, in which he denied any participation in the crime and offered an

---

er Mitchell had been advised of the affirmative defense—Mitchell and his attorney—and it is hard to envision how the hearing could have lasted much over an hour. If the judge had believed the attorney rather than Mitchell, that would have ended the matter—no opinion by the district judge, no certificate of probable cause, no appeal to this court and consequently

no appointment of counsel, no briefs, no argument, no opinion here. Also the attorney's reputation would have been cleared. In the absence of a hearing, however, we are bound to accept for present purposes Mitchell's claim that he was not advised by counsel of the affirmative defense.

alibi, and with at least part of his considerable criminal record.

Brief for Respondent-Appellee at 11–12 (citations omitted).

In addition, the attendant strengthening of the complainant's credibility would have increased the chances, whatever these otherwise were, of Mitchell's also being convicted of burglary, rape and impersonating a police officer, with a possible sentence for conviction of the four offenses of a minimum of 12½ years. *See* N.Y.Penal § 70.06. Even in the unlikely event that Mitchell had succeeded in defeating the first degree robbery and burglary charges by pressing the "play pistol" affirmative defense, and also had successfully defended the rape and impersonation counts, his own testimony, as the State points out, would have convicted him of second degree robbery, on which he could have been subject to a sentence of a minimum of 7½ and a maximum of 15 years, *see id.*, which is the same as the sentence he actually received. The circumstances thus make irresistible the conclusion that had Mitchell's lawyer advised him of the affirmative defense and had Mitchell decided to proceed to trial and to press the defense, he would most likely have come out far worse than he did.

■ We do not intend by any of this to minimize the seriousness of a prison term of at least 7½ years. But Mitchell was in a position where pressing the affirmative defense had a negligible chance of success, carried appreciable and serious dangers, and offered little prospect of a lighter sentence than Mitchell received. There is simply no "reasonable probability" that advising Mitchell of the existence of the affirmative defense would have produced a result more favorable to him.

■ Since we conclude that Mitchell's claim of ineffective assistance of counsel at the plea stage has no merit, there can equally be none in his contention with respect to counsel's failure to raise it on appeal.

We are not so sure as was the district judge that *Wainwright v. Sykes, supra,* 433 U.S. 72, 97 S.Ct. 2497, furnishes the applicable rule of decision when a state asserts that a defendant is barred from asserting the involuntariness of a guilty plea because he did not challenge it prior to sentencing although he claims that, because of the alleged failure of counsel to fully inform him, he was not aware of the possibility of a challenge at that time. *Wainwright* dealt with a lack of objection to the use of admissions allegedly made without *Miranda* warnings. By not overruling *Fay v. Noia,* 372 U.S. 391, 85 S.Ct. 822, 9 L.Ed.2d 837 (1963), it left open the question in what cases the "deliberate bypass" standard there announced and in what cases the more restrictive rule of *Wainwright* would apply. Both the Chief Justice and Justice Stevens filed concurring opinions, 433 U.S. at 91, 94, 97 S.Ct. at 2508, 2510, stressing that the question whether or not to object to the introduction of admissions such as those at issue in *Wainwright* was one normally left to the discretion of counsel. Agreeing with the majority that in such cases the test enunciated by *Fay v. Noia, supra,* 372 U.S. 391, 85 S.Ct. 822, unduly impeded a state's enforcement of a contemporaneous objection rule, they seem to have indicated that a standard less strict than that of *Wainwright* should be applied to a claim of procedural default with respect to decisions that must be made by the defendant personally. The majority took no position on this possible differentiation. No occasion to pursue the matter further was presented by *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (applying *Wainwright* test to failure to challenge a jury instruction); *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (applying *Wainwright* test to jury instruction in § 2255 case); or *Reed v. Ross,* — U.S. —, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984) (applying *Wainwright* to failure to challenge a jury instruction).

In this court the question of the appropriate spheres of *Wainwright* and *Fay* has arisen in the context of failures to appeal.

In *Forman v. Smith,* 633 F.2d 634, 638–40 (2d Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981), a thorough opinion by Judge Newman, we applied *Wainwright* to forfeitures of specific claims by failing to raise them on appeal. *See also Towndrow v. Henderson,* 692 F.2d 262, 265–66 (2d Cir.1982); *Silverstein v. Henderson,* 706 F.2d 361, 366–67 (2d Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). However, we expressly declined to decide "whether the cause and prejudice standard would also apply to a state prisoner's failure to take any appeal from his conviction," 633 F.2d at 640 n. 8, the precise situation in *Fay.* Two years later, in *Barker v. Jones,* 668 F.2d 154 (2d Cir.1982), we applied *Wainwright* rather than *Fay* in denying a petition for habeas corpus where the procedural default involved failure to pursue any direct appeal in the state courts, but we limited the decision in that case to its particular facts: the defendant had filed an appeal that was dismissed when he failed to pursue the appeal because he had escaped. *Id.* at 156. We need not decide, however, whether this case is governed by *Fay* or by *Wainwright* in order to affirm the denial of Mitchell's petition. Even if we assume *arguendo* that Mitchell could overcome the State's claim that he is barred from obtaining relief under § 2254 because of his procedural default, his claim that his plea was not knowing and intelligent fails on the merits.

Mitchell's best support comes from *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), where the Court invalidated a plea of guilty to second degree murder, an offense not charged in the indictment but included in the charge of first degree murder,[3] because the defendant had not been advised either by counsel or by the state court judge that intent to cause death was an element of the lesser included offense to which the defendant had pleaded guilty. The Court rested its decision on this ground alone—without any discussion of ineffective assistance of counsel.

■ Mitchell's case is fairly distinguishable. He makes no claim that he did not know the elements of the offense to which he pleaded guilty, namely, to display what appears to be a weapon while committing a robbery. In contrast to *Morgan,* the elements of the offense were clearly set forth in the indictment. In his allocution, Mitchell expressly admitted the theft and that he and his accomplice "displayed what appeared to be a revolver" and that he had a "play pistol," which looked like a pistol. Transcript of Plea Hearing at 11–13. The fact, if it is one, that the pistol "was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury could be discharged," N.Y. Penal Law § 160.15(4), establishes not an element of the offense, but an affirmative defense. The distinction is not a trivial one. The reason for a strict rule that a defendant must know the elements of the offense is that, subject to the qualification in note 1 of Justice White's concurring opinion, 426 U.S. at 648–49, 96 S.Ct. at 2259–60, a defendant can be convicted consistently with due process only after a trial or by an admission of guilt. Since a defendant cannot be deemed to have admitted something that he does not know, a plea made without the defendant's knowing every element of the offense is not a reliable indicator of factual guilt. *Cf. Menna v. New York,* 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195 (1975) (per curiam). An affirmative defense stands differently; due process does not require that a defendant be advised of every basis on which he might escape or receive a lesser punishment for an offense that he has committed. The distinction is particularly strong where, as is the case here, the burden of persuasion with respect to the

---

**3.** Justice White, writing for himself and three other Justices, noted that the case was unusual in this respect. 426 U.S. at 649–50 n. 2, 96 S.Ct. at 2259–60 n. 2 (White, J., concurring).

appropriate defense rests on the defendant.[4]

▆ The question of whether Mitchell's plea of guilty was a valid one would thus appear to be governed rather than by *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), which held that a state prisoner was not entitled to habeas relief because his guilty plea was obtained as a result of a coerced confession at a time when New York offered no constitutionally valid method to test the voluntariness of the confession, and *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), which denied such relief to a state prisoner who had pleaded guilty to an indictment by what the defendant had not known to be an unconstitutionally constituted grand jury. The Court said in *Tollett*:

> If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson, supra,* at 771, 90 S.Ct. at 1449....
>
> ....
>
> ... He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann.*

411 U.S. at 266, 267, 93 S.Ct. at 1607, 1608. Later the Court elaborated further:

> The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client, and such representation frequently involves highly practical considerations as well as specialized knowledge of the law.

*Id.* at 267–68, 93 S.Ct. at 1608–09. So here it would not be sufficient for Mitchell to

establish that when counsel advised Mitchell to plead guilty, he failed to apprise Mitchell of an affirmative defense when, as discussed in connection with Mitchell's Sixth Amendment claim, counsel had every reason to think that raising the defense had almost no chance of success and would expose Mitchell to the risk of serious additional punishment on other charges, with little to be gained if the defense succeeded. It would, of course, have been far better for counsel to have advised Mitchell of the affirmative defense, as counsel avers he did, while recommending against its use. But we cannot say that failure to do so, under the circumstances of this case, was outside the "range of competence demanded of attorneys in criminal cases." *McMann v. Richardson, supra,* 397 U.S. at 771, 90 S.Ct. at 1449. We see no reason why the elaboration of the standard of competence in *Strickland* should not also apply to the taking of a guilty plea under the circumstances presented here.

Affirmed.

---

4. The Court noted in *Patterson v. New York, supra,* 432 U.S. at 207, 97 S.Ct. at 2325 (footnote omitted):

> It has been said that the new criminal code of New York contains some 25 affirmative defenses which exculpate or mitigate but which must be established by the defendant to be operative.