**Frank PANUCCIO,**
**Petitioner–Appellant,**

v.

**Walter KELLY, Superintendent of Attica Correctional Facility; Robert Abrams, Attorney General of the State of New York, Respondents–Appellees.**

**No. 630, Docket 90–2313.**

United States Court of Appeals, Second Circuit.

Argued Feb. 20, 1991.

Decided March 6, 1991.

Judd Burstein, New York City, for petitioner-appellant.

Emil Bricker, Asst. Dist. Atty. (John J. Santucci, Dist. Atty., for Queens County, of counsel), for respondents-appellees.

Before FEINBERG, TIMBERS and MINER, Circuit Judges.

FEINBERG, Circuit Judge:

Petitioner Frank Panuccio appeals from a judgment of the United States District Court for the Eastern District of New York, Jack B. Weinstein, J., dismissing his petition for a writ of habeas corpus. Having pled guilty to the New York State crime of Manslaughter in the First Degree, Panuccio is now serving a sentence of eight and one-third to 25 years imprisonment. Panuccio claimed in the district court that the trial court should not have accepted his guilty plea without further inquiry into whether he was voluntarily and intelligently waiving his right to trial, and that he was deprived of his Sixth Amendment right to effective assistance of counsel. The district court found that Panuccio's guilty plea was knowing and voluntary and that his Sixth Amendment right to counsel was not violated. For the reasons given below, we affirm.

## Background

In March 1984, Panuccio and a friend, Brian Dennis, attended a "keg" party at a neighborhood park. Beer was available and Panuccio was drinking throughout the course of the evening, although the actual amount that he consumed has not been established. A dispute arose between the two friends apparently over Dennis's unauthorized use of Panuccio's automobile during the party. According to witnesses, when Dennis returned with the car, Panuccio pulled out a knife, threatened to kill Dennis and then got into a fight with him. The two, however, were pulled apart, and the party ended sometime thereafter.

Later that evening, Panuccio drove a car with a friend to Dennis's house. Dennis's mother answered the doorbell, and according to her statement to the police, Panuccio told her that there had been a keg party, and that Brian had borrowed his keys and he wanted them back. Mrs. Dennis told Panuccio that Brian was not home, but then she saw him walking up the street and pointed him out to Panuccio. Panuccio then ran out onto the street, whereupon he fatally stabbed Brian. Shortly thereafter, Panuccio drove his friend home and then proceeded to drive some three miles further.

Panuccio first met with his attorney, Marvyn Kornberg, on the morning after the homicide. Panuccio testified that after he described the incident, Kornberg said that he was of the opinion that the facts, at most, established the crime of Manslaughter because Panuccio and the deceased had been friends and Panuccio had been drunk. Kornberg also said that he would pursue a justification defense. However, in the following weeks Kornberg ascertained further details about the incident and concluded that the facts would not support that defense. During that time plea negotiations began.

The indictment charged Panuccio with the crimes of Murder in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree. At the habeas hearing in the federal district court, Kornberg testified that he thought that Panuccio had a minimal chance of prevailing at trial in light of the testimony likely to come from the victim's mother. In Kornberg's view, the only viable mitigation available would

be an attempt to show that Panuccio intended only to do serious physical injury and did not intend to kill, thereby reducing the crime to Manslaughter in the First Degree, the crime to which Panuccio eventually pled guilty. Since Panuccio faced a maximum sentence of 25 years to life on the murder charge if he proceeded to trial and was convicted, Kornberg advised Panuccio to accept the People's offer of a plea to Manslaughter in the First Degree and a recommendation to the sentencing judge of eight and one-third to 25 years imprisonment.

Kornberg had spoken with Panuccio and his father on at least 10 occasions prior to Panuccio's decision to accept the negotiated plea, but Panuccio claimed that the intoxication defense had never been discussed with him after his initial meeting with Kornberg. However, Kornberg had discussed the defense with Panuccio's father, but explained that he did not think that the risk of proceeding to trial on that basis was worthwhile.

Panuccio was convicted in May 1985, after pleading guilty. In December 1987 he moved in state court to vacate his judgment of conviction in part on the grounds that the trial court failed to determine that there was an adequate factual basis for his guilty plea, and that he was deprived of his Sixth Amendment right to effective assistance of counsel because counsel failed to inform him of a possible intoxication defense. The motion to vacate was denied, and Panuccio proceeded to exhaust his state remedies before petitioning the district court.

After holding an evidentiary hearing, the district court dismissed the petition on the grounds that Panuccio's constitutional rights were not violated because his plea was knowing and voluntary and his counsel served adequately in negotiating the plea even though he failed to inform Panuccio of the possible intoxication defense. This appeal followed.

## Discussion

### A. *Effectiveness of Counsel*

■ Where, as here, a defendant was represented by counsel during the plea process and entered his guilty plea upon the advice of counsel, the defendant's challenge to the plea based on ineffective assistance of counsel is governed by a two-part test. First, the defendant must show that counsel's representation fell below an objective standard of reasonableness, which is determined by the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart,* 474 U.S. 52, 56–59, 106 S.Ct. 366, 369–71, 88 L.Ed.2d 203 (1985). Second, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59, 106 S.Ct. at 370.

The district court found that Panuccio's counsel was aware that there had been drinking on the night of the crime but assumed that the drinking did not suffice to negate an element of the crime charged. The court further found that if the issue of intoxication had been placed before a jury, it would have been probable beyond a reasonable doubt that the jury would not have found the intoxication sufficient to negate any element of the crime charged. In support of this conclusion, the court cited the delay in drinking at the party that probably occurred while the victim had driven off in Panuccio's car (in order to look for more cups); the low amount of alcohol in the victim's body; the lapse in time between Panuccio's first attack on the victim and the eventual killing; the fact that Panuccio had threatened and attacked the victim prior to the stabbing; Panuccio's ability to drive a car both before and after the crime and his "relevant and clear" inquiry at the Dennis house that preceded his deliberate attack on the victim. In addition, the court took account of the possible reduction in prison time had Panuccio's intoxication defense been established. The parties agreed that intoxication would not have been a defense to Manslaughter in the Second Degree, N.Y. Penal Law § 125.15, and that the maximum sentence for that crime is five to 15 years, id. § 70.00. The judge apparently assumed—we think correctly—that the maximum would apply, "[p]articu-

larly with the mother of the deceased in this kind of a dreadful crime being available as a witness, and with the pressure that might have resulted on the court for the heaviest sentence had she testified." Under these circumstances, the court ruled, counsel had adequately served in negotiating the plea, since the intoxication defense had little chance of success and, in any event, the saving in prison time (from a minimum of eight and one-third years to a minimum of five) that Panuccio could achieve was not substantial compared with the risk of a sentence of 25 years to life.

Panuccio argues that the district court's findings are erroneous because the district court improperly limited its inquiry to the advice that counsel would have given if he had discussed the possibility of the intoxication defense with Panuccio, whereas the appropriate inquiry is whether counsel had a duty to inform Panuccio of the defense. Although we agree that there is more to the appropriate inquiry than merely resolving whether counsel would have adhered to his advice even if he had discussed the intoxication defense with Panuccio, cf. *Miller v. Angliker*, 848 F.2d 1312, 1322 (2d Cir.), cert. denied, 488 U.S. 890, 109 S.Ct. 224, 102 L.Ed.2d 214 (1988), it is clear to us that the district court did not so limit its inquiry.

■ The district court's conclusion that Panuccio's counsel served adequately in negotiating the plea was not based upon an express finding that counsel did not have a duty to disclose the defense or that Panuccio would have pled guilty even if he had known of the defense. Nonetheless, it is clear to us that the court properly understood the issues, since it reached its conclusion on the basis of factors relevant to the appropriate inquiry. The likelihood that an affirmative defense will be successful at trial and an assessment of the probable increase or reduction in sentence relative to the plea if the defendant proceeds to trial are clearly relevant to the determination of whether an attorney acted competently in recommending a plea. The standard of competency in turn determines whether the attorney had a duty to disclose the avail-

ability of the affirmative defense. In addition, our assessment of whether the defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 371. It is worth noting that this prong of the inquiry is not satisfied merely by Panuccio's testimony that he would have gone to trial had he known of the defense, as Panuccio in effect argues, since a defendant's testimony after the fact "suffers from obvious credibility problems." *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S. 843, 109 S.Ct. 117, 102 L.Ed.2d 91 (1988).

It is thus not surprising that we have previously undertaken the same sort of inquiry as that taken by the district court here in assessing whether an attorney's failure to advise a defendant of an affirmative defense rendered the assistance ineffective:

> [C]ounsel had every reason to think that raising the defense had almost no chance of success and would expose [defendant] to the risk of serious additional punishment on other charges, with little to be gained if the defense succeeded. It would, of course, have been far better for counsel to have advised [defendant] of the affirmative defense ... while recommending against its use. But we cannot say that failure to do so, under the circumstances of this case, was outside the "range of competence demanded of attorneys in criminal cases."

*Mitchell v. Scully*, 746 F.2d 951, 957 (2d Cir.1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)), cert. denied, 470 U.S. 1056, 105 S.Ct. 1765, 84 L.Ed.2d 826 (1985).

We agree with the district court that there was a high likelihood that the intoxication defense would not have succeeded at trial and would have exposed Panuccio to significant additional punishment while only providing the potential for a reduction in prison time relative to the plea that was not substantial compared to the risks of proceeding to trial. Panuccio's counsel served adequately during the plea negotia-

tions because he had no duty to disclose the intoxication defense under these circumstances. Panuccio was accordingly not denied his Sixth Amendment right to effective assistance of counsel. See *Mitchell*, 746 F.2d at 957; cf. id. at 954 (finding that defendant not prejudiced by counsel's omission); *Ames v. New York State Division of Parole*, 772 F.2d 13, 16 (2d Cir.1985) (same), cert. denied, 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 605 (1986).

### B. *The Validity of the Plea*

Panuccio claims that he was denied due process because the trial court, before it accepted his guilty plea, failed to make sufficient inquiry into whether he was voluntarily and intelligently waiving his right to a trial. Although Panuccio recognizes that a state court ordinarily need not make the type of inquiry required by Fed.R. Crim.P. 11, see *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir.1984) (per curiam), he claims that there were aggravating circumstances present that required the court to develop a factual basis before it could accept the plea.

First, Panuccio points to the following portion of his plea allocution as evidence that he did not admit that he had the requisite intent for the crime to which he was pleading guilty:

> THE COURT: You want to plead guilty?
>
> THE DEFENDANT: Yes.
>
> THE COURT: On March 25, 1984, in the County of Queens, with intent to cause serious physical injury to Brian Dennis, did you stab him with a knife?
>
> THE DEFENDANT: Not with intent, sir.
>
> THE COURT: I said, with intent to cause serious physical injury. I did not say with intent to kill.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you stab him with a knife?
>
> THE DEFENDANT: Yes, I did.

Panuccio claims that when he responded "yes, sir" to the court's inquiry on the element of intent, he was merely stating that he understood the court's distinction between the two types of intent and was not admitting that he had acted with the intent to cause serious physical injury. Panuccio argues that this allocution is even more suspect because a pre-pleading investigation report, in the possession of the trial court at the time of the plea, contained Panuccio's claim that he had stabbed Dennis in self-defense and had been intoxicated at the time of the stabbing. Thus, Panuccio concludes, there were sufficient facts before the district court to put it on notice that he did not have the requisite intent for the crime to which he was pleading guilty, requiring the court to develop further a factual basis before it could accept the plea. We disagree.

A guilty plea is constitutionally valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). A defendant must accordingly receive "real notice of the true nature of the charge against him," *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976), as well as a description of the critical elements of the offense such as intent, id. at 647 n. 18, 96 S.Ct. at 2258 n. 18.

Even if we accept Panuccio's claim that he never expressly admitted to the element of intent, at minimum he affirmatively stated in the allocution that he understood this element of the crime, as he later testified in the district court hearing before Judge Weinstein. Unlike *Henderson*, where the plea was involuntary because the defendant could not have understood the nature of the charges against him because the element of intent had never been explained, id. at 647, 96 S.Ct. at 2258, Panuccio clearly understood the type of intent involved in the crime to which he was pleading guilty. Moreover, as Panuccio admitted before the district court, his plea allocution consistently evinced his intent to go through with the plea; at no point did he deny his guilt and claim innocence. These "[s]olemn declara-

tions in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). The trial court could also appropriately assume that Panuccio understood the charges against him since he was represented by counsel who had presumably explained the charges to him. *Henderson,* 426 U.S. at 647, 96 S.Ct. at 2258. There was, in short, nothing about the allocution that undermined the reliability of the plea as an indicator of factual guilt. Thus, when Panuccio affirmatively stated that he wanted to go ahead with his guilty plea, the trial court could properly accept that statement as a reliable admission that he had acted with the requisite intent.

Panuccio's claim that his plea was invalid because neither his counsel nor the trial court informed him of the affirmative defense of intoxication is also without merit.

> [D]ue process does not require that a defendant be advised of every basis on which he might escape or receive a lesser punishment for an offense that he has committed. The distinction is particularly strong where, as is the case here, the burden of persuasion with respect to the appropriate defense rests on the defendant.

*Mitchell,* 746 F.2d at 956–57.

Thus, when a defendant has pled guilty on the advice of counsel and then challenges the plea on the ground that it was not voluntary and knowing because he was not apprised of an affirmative defense, we have upheld the validity of the plea unless the defendant can show that the advice he received from counsel was constitutionally ineffective within the meaning of the Sixth Amendment. *Id.* at 957; *see also Ames,* 772 F.2d at 15–16. As we found above in connection with Panuccio's Sixth Amendment claim, Panuccio received effective assistance of counsel even if we assume that he was not informed of the intoxication defense. The failure of either counsel or the trial court to inform Panuccio of the defense therefore did not render his plea invalid on grounds that it was not knowing and voluntary.

We affirm the judgment of the district court.