**Arthur KOHLER, Jr., Petitioner,**

v.

**Walter KELLY, Superintendent, Attica Correctional Facility, Respondent.**

**No. 90–CV–957C.**

United States District Court, W.D. New York.

Aug. 29, 1994.

As Amended Sept. 10, 1994.

State University of New York at Buffalo, School of Law (R. Nils Olsen, of counsel), Buffalo, NY, for petitioner.

G. Oliver Koppell, Atty. Gen. of the state of NY (Douglas S. Cream, of counsel), Buffalo, NY, for defendant.

## BACKGROUND

CURTIN, District Judge.

Petitioner Arthur Kohler, Jr., brings this habeas corpus action challenging his conviction for first-degree sodomy. Petitioner was indicted in a 24–count indictment by an Erie County grand jury on January 17, 1985. On March 25, 1987, he pleaded guilty to one count of sodomy in the first degree in New York State County Court, Erie County. He was sentenced on May 20, 1987, as a second violent felony offender to an indeterminate term of imprisonment from eight to sixteen years.

Initially, petitioner moved in Erie County Court for an order vacating the judgment of conviction based upon CPL § 440.10. This motion was denied on October 28, 1988. Petitioner then appealed the judgment of conviction to the New York State Supreme Court, Appellate Division, Fourth Judicial Department. The court unanimously affirmed the conviction, rejecting petitioner's claims of ineffective assistance of counsel and improper acceptance of his guilty plea. On April 10, 1989, leave to appeal to the New York State Court of Appeals was denied. Petitioner's motion in the New York State County Court, Erie County, for an order vacating the judgment of conviction based upon CPL § 440.20 was denied on September 5, 1989.

Having exhausted his state judicial remedies, petitioner now applies for a writ of habeas corpus from this court. He advances two basic grounds for relief. First, he alleges he was denied his Sixth Amendment right to counsel because of ineffective assistance of counsel. Petitioner cites six reasons why he received ineffective assistance from his court-appointed attorney: 1) Counsel failed to pursue a defense of intoxication; 2) Counsel failed to explore issues of petitioner's competency; 3) Counsel did not assist petitioner in

exercising his right to appear before the grand jury; 4) Counsel erred by advising him to reject a plea bargain that would have resulted in a shorter sentence than he ultimately received; 5) Counsel failed to request that the judge recuse himself because of a potential conflict of interest; and 6) the attorney acted unethically by soliciting a $1,000.00 payment from petitioner. Petitioner's second claim for relief is that the trial court erred in accepting his guilty plea, which he claims was not an intelligent, voluntary act.

## DISCUSSION

### I. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution provides all criminal defendants the right to counsel. The right to counsel has been found to encompass the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). The case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), established the basis for judging claims of ineffective assistance of counsel. The benchmark is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2063. The Court established a two-part standard for evaluating claims of ineffective assistance. "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064. In the first performance prong of this standard, the defendant must show that the representation fell below "an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. The second prejudice prong requires that the defendant show that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. There is a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065.

The *Strickland* case dealt with errors made by counsel during a sentencing hearing in a capital murder case. In *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Court found that the two-part standard set out in *Strickland* is applicable to ineffective assistance claims arising out of the plea process. The first prong of the test is the same. The prejudice requirement focuses on whether counsel's unreasonably poor performance affected the outcome of the plea process. To satisfy this requirement, the defendant must show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 at 59, 106 S.Ct. at 370.

### A. Intoxication Defense

■ Petitioner first claims ineffective assistance of counsel based on his attorney's failure to inform him of a possible defense of intoxication. Petitioner asserts that this omission, combined with many other errors of counsel, prove that counsel's performance fell below a standard of reasonableness, and also prejudiced petitioner in that he received a more onerous sentence than he otherwise would have received. "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 at 59, 106 S.Ct. at 370.

In *Panuccio v. Kelly*, 927 F.2d 106, 109 (2d Cir.1991), the United States Court of Appeals for the Second Circuit considered a claim of ineffective assistance of counsel by a petitioner who similarly maintained that he plead guilty only because his counsel never informed him that he could use an intoxication defense. The *Panuccio* court reiterated that the court must evaluate "[t]he likelihood that an affirmative defense will be successful at trial ..." and added that "an assessment of the probable increase or reduction in sentence relative to the plea if the defendant proceeds to trial [is also] clearly relevant to the determination of whether an attorney

acted competently in recommending a plea." 927 F.2d at 109.

Respondent first argues that defense counsel is not required to search for alibis which would amount to a fabrication of a defense. There is nothing in the record which would have led Kohler's attorney to believe that during the course of his criminal activity, Kohler was inebriated to the extent that he could not form the requisite intent to commit the crimes with which he was charged. On the contrary, the record indicates that the petitioner was in the victim's building working and conversing with the victim, and it does not appear that the victim noticed any drunkenness on the part of the petitioner. In addition, during the crime the petitioner capably drove to another county and then returned to Erie County without incident (Plea Transcript, 4–6). The question is not whether the petitioner was drunk, but whether his intoxication was of such a degree, character, and extent as to deprive him of the power to form a particular intent. *People v. Koerber*, 244 N.Y. 147, 155 N.E. 79 (1926); *People v. Goodman*, 152 A.D.2d 705, 544 N.Y.S.2d 163 (2d Dept.1989).

■ Petitioner's only evidence to support a defense of intoxication bears on his history of alcoholism and the fact that he was intoxicated at the time of arrest. Instances of intemperance prior to the commission of the offense cannot be considered in determining whether the defendant had the requisite mental state or was intoxicated at the time of the offense at issue. *People v. Holliday*, 38 N.Y.2d 763, 381 N.Y.S.2d 53, 343 N.E.2d 770 (1975).

■ Respondent also claims that Kohler could not have used intoxication as a defense to first-degree sodomy. In general, intoxication is not a statutory defense but may be offered as evidence if it negates an element of the crime charged. N.Y. Penal Law § 15.25. Voluntary intoxication can be a defense if it prevents the formation of the specific intent necessary to complete the crime. *People v. Westergard*, 69 N.Y.2d 642, 511 N.Y.S.2d 587, 503 N.E.2d 1018 (1986). If the crime charged requires only a general intent, intent will be presumed from the intentional completion of the act, and intoxi-cation will not be a defense. *People v. Davis*, 128 Misc.2d 782, 491 N.Y.S.2d 240 (1985).

New York courts have never conclusively defined sodomy as a general intent crime, although some courts have made that assumption. *See, e.g., People v. Bagarozy*, 132 A.D.2d 225, 522 N.Y.S.2d 848 (1st Dept.1987), *People v. Williams*, 81 N.Y.2d 303, 598 N.Y.S.2d 167, 614 N.E.2d 730 (1993). Therefore, it is unclear whether Kohler could have presented an intoxication defense. Moreover, he was initially indicted on 24 counts, including other serious felonies. Had he proceeded to trial, Kohler may not have been able to use an intoxication defense against some of these other charges. The *Panuccio* court emphasized that in order to show prejudice in a guilty plea, the petitioner must show that the defense which he would have used at trial was likely to succeed, especially if proceeding to trial "would have exposed [the defendant] to significant additional punishment. . . ." 927 F.2d at 109. Again, there is nothing in the record to indicate that Kohler was intoxicated during the commission of this crime. Since it is uncertain under New York State law whether an intoxication defense would have been available to Kohler on the sodomy charge, and he has presented no evidence showing his intoxication at the time of the crime, Kohler has not demonstrated that raising the intoxication defense and going to trial would have resulted in acquittal or even a lesser sentence. Accordingly, failure to raise such a defense cannot be construed as falling below the standard of reasonable assistance.

### B.  Issue of Petitioner's Competency

■ Petitioner's second claim of ineffective assistance of counsel is based on counsel's failure to explore the issue of petitioner's competency. Respondent asserts that petitioner is procedurally barred from raising this claim because it was not raised properly in state court, and was denied pursuant to CPL § 440.30(4)(b). However, petitioner is not claiming that because he was incompetent to stand trial or plead guilty, his conviction should be overturned. Rather, the issue of his competency is used as one example of how his counsel was ineffective. Petitioner is

not barred from asserting that the failure of counsel to question his competency violated his Sixth Amendment right.

Again, the *Strickland–Hill* standard must be applied to assess counsel's actions. The test of incompetency is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960).

■ In order to prove that counsel erred in failing to pursue questions of Kohler's competency, the record must show some evidence indicating that Kohler's competency was in doubt. *Dennis v. Turner*, 729 F.Supp. 15 (S.D.N.Y.1990). Petitioner claims that his suicide attempt after his arrest should have alerted his counsel that his competency was in question. However, a defendant's suicide attempt, standing alone, has not been found to mandate a hearing as to the defendant's competency, nor does it show that the defendant lacked volitional competency. *People v. Hall*, 168 A.D.2d 310, 562 N.Y.S.2d 641 (1st Dept.1990); *People v. Melvin*, 99 A.D.2d 517, 470 N.Y.S.2d 690 (2d Dept.1984). Kohler's attempted suicide was not enough to alert counsel that his client may have lacked the capacity to understand the proceedings against him. *People v. Harrington*, 163 A.D.2d 327, 557 N.Y.S.2d 451 (2d Dept.1990). This is particularly true in light of the fact that Kohler seemed to be rational, lucid, and to have participated in a meaningful way during the plea and sentencing proceedings (Plea Transcript, 13–14, Sentence Transcript, 12). *Dennis*, 729 F.Supp. at 17.

There is nothing else in the record that could substantiate a finding of mental incapacity. Petitioner has failed to present any other evidence that he lacked competency at the time of the trial, or evidence that should have alerted counsel that there might be a competency issue. Petitioner has not established that counsel's actions fell below a "reasonable" standard or that "but for counsel's errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694, 104 S.Ct. at 2064, 2068.

## C. Grand Jury Testimony

■ Petitioner's third claim of ineffective assistance of counsel is based on counsel's failure to secure petitioner's right to testify before the grand jury. Respondent asserts that this claim is procedurally barred by petitioner's failure to move to dismiss the indictment within the five-day period allowed under state law. However, once again, petitioner is using counsel's failure to secure his right to testify as evidence that counsel's performance fell below a standard of reasonableness, not to show that the indictment should have been dismissed. Counsel's failure to insure that petitioner could testify before the grand jury does not amount to ineffective assistance of counsel.

■ CPL § 190.50 gives a defendant the right to appear as a witness at a grand jury proceeding. There is nothing in the record to indicate that the petitioner ever requested that he be allowed to testify. Assuming the truth of petitioner's claim, counsel's failure to secure his right to testify before the grand jury does not, by itself, establish ineffective assistance of counsel. *People v. Hunter*, 169 A.D.2d 538, 564 N.Y.S.2d 391 (1st Dept.1991); *People v. Turner*, 187 A.D.2d 469, 589 N.Y.S.2d 895 (2d Dept.1992).

■ There are a number of valid, tactical reasons for counsel to decide that Kohler should not testify before the grand jury. He does not mention what evidence he would have presented if he had appeared as a witness. If Kohler had testified, he would have exposed himself to cross-examination by the prosecution, and could have been questioned about his previous crimes. In addition, he would have waived the privilege against self-incrimination with regard to the information he volunteered. This provides the prosecution with valuable pretrial discovery, and also gives the prosecution material with which to impeach the defendant if he testifies at trial. Although counsel should have consulted the petitioner on the issue, it was not unreasonable for counsel to decide that testifying before the grand jury was not in Kohler's best interests.

Petitioner has not demonstrated that he was prejudiced by his inability to testify. Considering the amount of evidence the prosecution had, Kohler's criminal record, and the low burden of proof, it is highly unlikely that Kohler would not have been indicted. At best, Kohler could have raised the issue of his intoxication; but since it is not a statutory defense, raising it could not have prevented him from being indicted. Therefore, petitioner has not shown that but for counsel's actions, the outcome of the proceeding would have been different.

### D. Plea Bargain

■ Petitioner argues that his counsel's failure to pursue a plea bargain offer that would have resulted in a shorter sentence is another instance of ineffective assistance of counsel. The petitioner claims that Judge Doyle offered him a plea bargain of six to twelve years that he rejected on advice of counsel. His subsequent guilty plea netted him a sentence of eight to sixteen years. It is unclear from the record whether this offer ever took place. It is also unclear from the record under what circumstances and conditions the plea was offered. The only evidence is a letter from Kohler to his attorney that inquires about the plea deal of six to twelve years offered by Judge Doyle and a virtually unreadable response to Kohler from his attorney. (Petitioner's Affidavit in Support of his Motion to Vacate Judgment upon C.P.L. 440.10, Exhibits 5 and 6).

■ If a valid lesser plea had been offered to petitioner soon after his indictment, his counsel could reasonably have advised its rejection. It appears from petitioner's brief that at the time of the offer his counsel believed he could gain acquittal or a better plea bargain for his client. It was only after at least one suppression motion was lost that counsel suggested that it would be in Kohler's best interests to plead to first degree sodomy and a sentence of eight to sixteen years, rather than try for an acquittal and risk a much greater sentence after conviction on all charges. Although with hindsight one might conclude that an earlier plea would have resulted in a lesser sentence, the right to meaningful representation does not include the right to a flawless performance. *People v. Gonzales*, 168 A.D.2d 743, 564 N.Y.S.2d 210 (3d Dept.1990). Petitioner has failed to prove that counsel's actions fell below an objective standard of reasonableness as required by *Strickland* and *Hill*.

### E. Potential Judicial Conflict of Interest

■ Petitioner's fifth claim of ineffective assistance of counsel stems from counsel's failure to explore a possible conflict of interest caused by the presiding judge's new law clerk. After petitioner pled guilty and before his sentencing hearing, Judge Drury hired a law clerk who had previously worked in the District Attorney's office. The Judge disclosed to the parties that he had fully investigated the issue and determined that there was no conflict. The law clerk had not worked on this case while at the District Attorney's office and had not participated in the case while working for the Judge.

■ The question of whether a judge should recuse himself is a matter left to the personal conscience of the court. *People v. Bartolomeo*, 126 A.D.2d 375, 513 N.Y.S.2d 981 (2d Dept.1987). The Judge felt that there was no conflict, and petitioner has not offered any evidence that would have made it reasonable for counsel to believe that any conflict of interest existed. Therefore, it was not below an objective standard of reasonableness to fail to request a hearing on the matter.

■ In addition, petitioner has failed to show any prejudice resulting from counsel's conduct. The law clerk was not hired until after petitioner had submitted his guilty plea. During the plea, Judge Drury told Kohler that he would probably receive a sentence of eight to sixteen years, to run consecutively with his current sentence. If, after considering the probation report, the Judge felt Kohler would have to get more time, he would allow him to withdraw his guilty plea (Plea Transcript, 10–11). Judge Drury maintained this promise and sentenced petitioner to a consecutive term of eight to sixteen years. The law clerk could not have influenced the Judge's decision in this case. Petitioner has failed to show that, but for the counsel's

conduct, the outcome of the case would have been different.

### F. Solicitation

■ Petitioner's sixth claim of ineffective assistance of counsel is that his assigned counsel acted unethically by soliciting payment from him for his defense. Petitioner had been represented at all relevant stages of his prosecution at the state level by counsel assigned by the court because of his financial inability to obtain privately retained counsel. Petitioner alleges that counsel informed the petitioner that he would obtain acquittal if petitioner paid him $1,000.00. Three months later, petitioner's parents made a partial payment to counsel of $200.00. As proof, petitioner offers a copy of a cancelled check. While this evidence would probably not suffice to prove solicitation at trial, for the purpose of this motion, "where there is a reasonable possibility that the allegations are true, the court must assume the worst." *U.S. v. Fulton,* 5 F.3d 605, 611 (1993).

Petitioner asserts that this behavior is clearly unethical. He was entitled to receive the services of counsel appointed by the court without obligation to pay. He claims that because his attorney linked representation and acquittal with the payment of fees, he was violating all reasonable norms of conduct for assigned counsel. Petitioner maintains that this error, along with many other failures of counsel in this case, actually and materially prejudiced his defense, leading to a more lengthy sentence than he might otherwise have received.

■ It is clear that solicitation by court-appointed counsel violates ethical standards. However, the United States Court of Appeals for the Second Circuit has refused to find that unethical conduct by an attorney constitutes per se ineffective assistance of counsel. In *Winkler v. Keane,* 7 F.3d 304 (2d Cir. 1993), *cert. denied* —— U.S. ——, 114 S.Ct. 1407, 128 L.Ed.2d 79 (1994), the Second Circuit found such behavior per se violates the Sixth Amendment only when there is an "actual or constructive denial of the assistance of counsel altogether." *Id.* at 308, *citing Strickland v. Washington,* 466 U.S.

668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). Thus far, the Second Circuit has only found an actual or constructive denial of counsel "in two limited circumstances: where defendant's counsel was unlicensed, and when the attorney has engaged in the defendant's crimes." *Fulton,* 5 F.3d at 611.

■ A demand of payment by a court-appointed attorney does not reach the degree of grossly improper behavior needed to find per se ineffective assistance of counsel. However, unethical behavior may still render counsel ineffective if it creates a conflict of interest between the attorney and defendant. If only a potential conflict of interest is found, then petitioner must demonstrate prejudice in order to prove the conflict caused a violation of his Sixth Amendment right to effective counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, if petitioner shows actual conflict of interest that affected the adequacy of his representation, prejudice is presumed. *Cuyler v. Sullivan,* 446 U.S. 335, 349, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). An actual conflict of interest occurs when the interest of the attorney and the defendant "diverge with respect to a material factual or legal issue or to a course of action." *Cuyler,* 446 U.S. at 356 n. 3, 100 S.Ct. at 1722 n. 3.

In *Winkler v. Keane,* the Court found an actual conflict of interest when representation by the defendant's attorney in a criminal proceeding was premised on a contingent fee. Since the agreement provided counsel with a extra fee only if the defendant was acquitted, counsel had no incentive to seek a plea bargain or conviction of a lesser offense. Thus, the attorney's interest in earning the contingent fee conflicted with the defendant's interest in obtaining a favorable resolution to the charges he was facing.

■ The existence of an actual conflict is not as clear in the instant case. A potential conflict did occur at the moment that defense counsel inserted his own pecuniary interest into the case by relating acquittal with the payment of a fee. What is more difficult to ascertain is whether the attorney's interest ever diverged from Kohler's.

■ Unlike *Winkler*, the amount of money petitioner's counsel received would not have varied with the outcome of the case. However, it is possible that the interests of Kohler and his attorney diverged once the attorney was informed that petitioner's family was unable or unwilling to pay the additional fee. The record does not show a motivation for counsel to solicit money from the petitioner, except for references in petitioner's pro se briefs that counsel stated an intent to hire a private investigator. If the attorney linked receipt of additional payment to diligent representation, then the failure to obtain the full amount requested may have influenced his efforts to reach the best result for his client. Following the *Fulton* court's admonition to "assume the worst" set of circumstances based on the facts asserted by the petitioner, I will assume that an actual conflict was created by the request and subsequent denial of additional payment to represent Kohler.

■ Under *Winkler*, Kohler must next demonstrate that his representation was adversely affected. To demonstrate this, "a defendant must establish that an 'actual lapse in representation' resulted from the conflict." *Winkler*, 7 F.3d at 309, *quoting Cuyler*, 446 U.S. at 336, 100 S.Ct. at 1711. The Second Circuit has adopted a test to determine if a defendant was adversely affected by counsel's failure to take certain actions. The defendant must show that there was some plausible defense or tactic that counsel failed to pursue. The defendant need not prove that the defense would have been successful, but merely that it was a viable alternative. The defendant then must show that the alternative was not undertaken as a direct result of the conflict of interest. *Winkler*, 7 F.3d at 309.

Each of petitioner's claims of the failures of counsel has been discussed in detail above. No single omission by counsel was found to have prejudiced his defense. The defense of intoxication was not viable. There was an inadequate basis to argue that the petitioner lacked competency to stand trial or to submit a guilty plea. Based on the record, it was reasonable for counsel to recommend that Kohler refuse the initial plea offer. It was

also reasonable for counsel to feel that testifying before the grand jury was not in the petitioner's best interests, and lastly, that a hearing on the judge's possible conflict of interest was not necessary.

Petitioner argues that cumulatively all of these omissions amounted to ineffective assistance of counsel. However, petitioner has not shown that the choices made by counsel were as a result of the conflict of interest created by counsel's solicitation of money from defendant. Petitioner alleges that at his first meeting with his counsel, his counsel requested $1,000.00 in order to gain his acquittal. At this early stage in the proceedings, it was reasonable to think that acquittal was a valid possibility. At this point, Kohler and his counsel's interests were the same, to achieve acquittal. Directly after his request for money, the grand jury hearing was held. Counsel's failure to pursue his client's right to testify was not unreasonable given the risks involved, as discussed above. Three months later, Kohler's parents were able to pay counsel $200.00. One month after that, the alleged plea bargain offer was rejected. As we concluded above, counsel could have believed that he could get a better deal for his client, and so it was reasonable for him to reject this offer.

It is unclear from the record how counsel reacted to receiving less than $1,000.00 from the Kohlers. He failed to pursue certain issues such as an intoxication defense, petitioner's competency, and a possible judicial conflict of interest. However, it appears from the record that he did not give up on the case. He proceeded to make motions to suppress, and represented the petitioner at the *Wade* and *Huntley* hearings. Counsel advised Kohler to plead guilty right after he lost the suppression motions, when it became reasonable for counsel to believe it would be in the best interests of his client.

While certain acts or omissions of counsel in this case can be characterized as mistaken or unethical, petitioner has failed to show that he was supplied less than the meaningful representation required under the Federal Constitution. It is not necessary that counsel provide perfect representation. The record does not reflect that but for counsel's

actions, the case would have turned out differently, or that counsel's decisions were influenced by the unethical fee arrangement.

## II. Petitioner's Plea as an Intelligent, Voluntary Act

██ Petitioner's second claim for relief is that he was denied due process when the trial court accepted his guilty plea because the plea was not an intelligent, voluntary act. He claims his guilty plea was not voluntary because he was not made aware of the defense of intoxication or of the intent requirement for the crime of first-degree sodomy. A guilty plea is constitutionally adequate if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). Each defendant must have notice of the "true nature of the charges against him." *Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976).

Petitioner claims that the court did not discuss the elements of the crime to which he pleaded guilty, particularly the requisite mental state. However, petitioner stated in the plea allocution that he understood the charges in the Indictment and the meaning of what he was pleading to (Plea Transcript, 10). The crimes he was charged with were plainly laid out in the Indictment. The court clearly informed the petitioner that he was pleading guilty to forcible sodomy, which is deviate sexual intercourse by forcible compulsion. Kohler acknowledged that he understood this and agreed to it (Plea Transcript, 7). Petitioner has failed to show that any additional mental state is required for the crime of sodomy. In addition, at no time during the plea allocution did petitioner deny his guilt and claim innocence; at all times he clearly showed his intent to go through with the guilty plea. *Panuccio,* 927 F.2d at 110.

██ Petitioner's claim that his guilty plea was involuntary because he was not informed of the defense of intoxication is also without merit. Intoxication is an affirmative defense, not an element of the crime charged. "[D]ue process does not require that a defendant be advised of every basis on which he

might escape or receive a lesser punishment for an offense that he has committed." *Mitchell v. Scully,* 746 F.2d 951, 956 (2d Cir.1984). Therefore, petitioner may only show that his guilty plea was not voluntary by showing that the advice he received from counsel to plead guilty was constitutionally ineffective. *Id.* at 957. As discussed above, counsel was not ineffective even if he did not inform petitioner of the defense of intoxication.

Petitioner's reliance on *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), and *Harned v. Henderson,* 588 F.2d 12 (1978) is misplaced. In both cases the defendant was unaware of an essential element of the crime to which he pleaded guilty, not the availability of an affirmative defense. In *Henderson,* the defendant was unaware of the element of intent (to cause death) in the crime of second-degree murder. In addition, the defendant was substantially below average intelligence, the indictment did not charge second-degree murder, and there was no evidence that the nature of the crime had been discussed. In *Harned,* the defendant was unaware of the element of intent (to cause physical injury) for first-degree burglary. The defendant never admitted that he committed any violence, an essential element of the crime. In the instant case, the defendant clearly admitted that he did engage in deviate sexual intercourse—oral sodomy—by forcible compulsion, through punching the victim. Therefore, I find that petitioner's guilty plea was intelligent and voluntary.

## CONCLUSION

The petitioner's application for a writ of habeas corpus is denied. Certificate of probable cause is denied.

For the reasons set forth above, I hereby certify that any appeal from this order would not be taken in good faith pursuant to 28 U.S.C. § 1915(a), and leave to appeal to the Court of Appeals as a poor person is hereby denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

Further requests to proceed on appeal as a poor person should be directed, on motion, to

the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

So ordered.